UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 2:14-cr-00129-JAW |
| | ) | |
| SIDNEY P. KILMARTIN | ) | |

**ORDER ON DEFENDANT'S MOTION TO DISMISS**

Sidney Kilmartin moves to dismiss the indictment on the theories that the Court lacks federal subject matter jurisdiction in this case, and that the statute under which he has been charged, 18 U.S.C. § 1716, is unconstitutionally vague in violation of his due process rights. The Court denies Mr. Kilmartin's motion to dismiss, concluding that it has subject matter jurisdiction and that 18 U.S.C. § 1716 is not unconstitutionally vague.

**I. PROCEDURAL BACKGROUND**

On November 4, 2014, a federal grand jury indicted Mr. Kilmartin on two counts of depositing for mailing and delivery a nonmailable substance, with the intent to kill or injure Andrew Denton of Hull, England, in violation of 18 U.S.C. § 1716. *Indictment* (ECF No. 3). Count I of the indictment reads:

> On about November 16, 2012, in the District of Maine and elsewhere, the defendant Sidney P. Kilmartin knowingly, and with the intent to kill or injure another, deposited for mailing and delivery something declared nonmailable by Title 18, United States Code, Section 1716, not in accordance with rules and regulations prescribed by the United States Postal Service, in other words, potassium cyanide, a poison, which Kilmartin mailed to Andrew Denton of Hull, England.
> All in violation of 18 U.S.C. § 1716(j)(2).

*Indictment* at 1. Count II reads:

> On about December 11, 2012, in the District of Maine and elsewhere, the defendant Sidney P. Kilmartin knowingly deposited for mailing and delivery something declared nonmailable by Title 18, United States Code, Section 1716, not in accordance with rules and regulations prescribed by the United States Postal Service, in other words, potassium cyanide, a poison, which resulted in the death of a person, Andrew Denton.
>
> All in violation of 18 U.S.C. § 1716(j)(3).

*Indictment* at 2.

On January 30, 2015, Mr. Kilmartin moved to dismiss the indictment on the grounds that federal subject matter jurisdiction is lacking and that the § 1716(j)(3) is unconstitutionally vague. *Def.'s Mot. to Dismiss* (ECF No. 36) (*Def.'s Mot.*). The Government responded on February 20, 2015. *Gov't's Opp'n to Mot. to Dismiss* (ECF No. 38) (*Gov't's Opp'n*). Mr. Kilmartin replied on March 6, 2015. *Def.'s Reply to Gov't's Opp'n to Mot. to Dismiss* (ECF No. 42) (*Def.'s Reply*).

## II. THE PARTIES' POSITIONS

### A. Sidney Kilmartin's Motion

Mr. Kilmartin first argues that subject matter jurisdiction is lacking in this case because the mailing was not made with an intent to kill and did not result in death. *Def.'s Mot.* at 7-11. Mr. Kilmartin contends that the legislative history laying out the federal interest supporting § 1716 "focus[es] on the use of the mails as an instrumentality to cause injury or death", but does not mean to include harm that occurs "once the mail has been opened and the recipient endeavors to use the contents of the package at some later point to commit suicide of his own free-will." *Id.* at 9-10.

2

Second, Mr. Kilmartin argues that 18 U.S.C. § 1716(j)(3), the violation of which is alleged in Count II, violates his due process rights under the Constitution because it is overly vague. *Id.* at 12. Specifically, Mr. Kilmartin argues that the statutory language "resulted in the death of any person" is ambiguous because it is unclear from the face of the statute whether a mailed item later used voluntarily by the recipient to kill himself qualifies as "results" in the death of a person. *Id.* at 14-15. He maintains that the statute does not expressly and unambiguously prohibit mailing something that later results in a death preceded by intervening and voluntary act of suicide by the recipient. *Id.* at 16.

B.   **The Government's Response**

The Government argues that its "authority over mail is broad and deep, and has roots that extend beyond the formation of the United States" and that "Congress has the authority to protect federal interests associated with the postal service with criminal sanctions." *Gov't Opp'n* at 2-3. It contends that § 1716 is clear, unambiguous, and gives fair notice. *Id.* at 6. Specifically, the Government argues that § 1716 defines the crime with sufficient particularity that ordinary people can understand what conduct is criminalized, that it has been a federal crime to mail poison for over 100 years, and that cyanide, which is a poison that can kill or injure, is specified as a nonmailable poison by regulations promulgated pursuant to § 1716. *Id.* at 4-7. Next, the Government claims that § 1716 criminalizes mailing poison with an intent to kill or injure, and that suicide is by nature an intentional killing and assisting suicide is widely criminalized. *Id.* at 8-9.

The Government reasons that it is highly unlikely that Congress intended to carve out an exception to § 1716 for assisted suicide, given that the other exceptions are for science and commercial transportation, and maintains that even if Congress did so, Mr. Kilmartin has the burden both to demonstrate that an assisted suicide defense is available as a matter of law and to produce sufficient evidence to support it at trial. *Id*. at 10. Additionally, the Government states that § 1716(j)(3), the "resulting in death" count, requires that poison be the but-for cause of death, not the proximate cause of death or that death was foreseeable. *Id*. at 11.

C. **Sidney Kilmartin's Reply**

Mr. Kilmartin acknowledges that the federal government has broad authority over the mail under the necessary and proper clause but insists that in no way does that authority expand to include mailing poison that has been safely mailed, received, and consumed voluntarily and knowingly by its recipient. *Def.'s Reply* at 2-3. He repeats his refrain that § 1716(j)(3) is unconstitutionally vague, and that "no ordinary person would expect that mailing a . . . safely contained package of cyanide would expose them to the penalties under [§ 1716(j)(3)] when an independent party safely opens the package and uses it knowingly at some later time to cause death." *Id*. at 7.

III. **DISCUSSION**

A. **Review of a Motion to Dismiss**

Rule 12(b) of the Federal Rules of Criminal Procedure provides that "at any time while the case is pending," the court may hear a claim that the indictment fails to invoke the court's jurisdiction. FED. R. CRIM. P. 12(b)(2). However, "[w]hen a

4

federal court uses its supervisory power to dismiss an indictment it directly encroaches upon the fundamental role of the grand jury. That power is appropriately reserved, therefore, for extremely limited circumstances." *Whitehouse v. United States District Court*, 53 F.3d 1349, 1360 (1st Cir. 1995) (citing *Bank of Nova Scotia v. United States*, 487 U.S. 250, 263 (1988)).

The First Circuit recently reiterated the legal principles applicable to a motion to dismiss an indictment. *United States v. Ngige*, No. 14-1136, 2015 U.S. App. LEXIS 4233, at *8-11 (1st Cir. Mar. 17, 2015). A motion to dismiss an indictment must "attack the facial validity of the indictment" and not merely "challenge[] the government's substantive case." *Id.* at *10. "When a defendant seeks dismissal of an indictment, courts take the facts alleged in the indictment as true, mindful that 'the question is not whether the government has presented enough evidence to support the charge, but solely whether the allegations in the indictment are sufficient to apprise the defendant of the charged offense.'" *Id.* (quoting *United States v. Savarese*, 686 F.3d 1, 7, (1st Cir. 2012)). Thus, "courts routinely rebuff efforts to use a motion to dismiss as a way to test the sufficiency of the evidence behind an indictment's allegations." *Id.* (quoting *United States v. Guerrier*, 669 F.3d 1, 4 (1st Cir. 2011)). Indeed, the rules expressly limit a court's authority to dismiss an indictment to those issues that a court can determine "without a trial on the merits." FED. R. CRIM. P. 12(a).

This rule applies even where the defendant is claiming a lack of subject matter jurisdiction. *Guerrier*, 669 F.3d at 4. ("[U]nless prosecutors have made what can

fairly be described as a full proffer of the evidence they intend to present at trial to satisfy the jurisdictional element of the offense, the sufficiency of the evidence is not appropriately addressed on a pretrial motion to dismiss the indictment") (citation and internal quotation marks omitted). *See United States v. Gonzalez–Mercado*, 402 F.3d 294, 300–01 (1st Cir. 2005) ("[W]ith few exceptions . . . a federal criminal case is within the subject matter jurisdiction of the district court if the indictment charges that the defendant committed a crime described in a federal criminal statute").

### B. General Adequacy

Preliminarily, the Court observes that the indictment in this case easily withstands a more traditional attack. In *United States v. Guerrier*, the First Circuit explained that "[w]hen grading an indictment's sufficiency, we look to see whether the document sketches out the elements of the crime and the nature of the charge so that the defendant can prepare a defense and plead double jeopardy in any future prosecution for the same offense." *Guerrier*, 669 F.3d at 3. The indictment in this case sets forth the statutory elements and in light of those allegations, the Government would have a difficult time prosecuting Mr. Kilmartin again for these same offenses. The indictment therefore readily survives the *Guerrier* tests.

### C. Subject Matter Jurisdiction

#### 1. The Legislative History Argument

Section 1716 of title 18 states in part:

(j)(2) Whoever knowingly deposits for mailing or delivery . . . anything declared nonmailable by this section, whether or not transmitted in accordance with the rules and regulations authorized to be prescribed

6

> by the Postal Service, with intent to kill or injure another . . . shall be fined under this title or imprisoned not more than twenty years, or both.
>
> (j)(3) Whoever is convicted of any crime prohibited by this section, which has resulted in the death of any person, shall be subject also to the death penalty or to imprisonment for life.

18 U.S.C. § 1716(j)(2)-(3).

Regarding jurisdiction, Mr. Kilmartin posits two arguments: (1) that the legislative history confirms that Congress intended § 1716 to be limited to letter bombs or packages that cause immediate harm upon opening; and (2) that the language of § 1716 expressly limits its scope to circumstances where the mail itself causes the injury or death. *Def.'s Mot.* at 7-11. In his first argument, Mr. Kilmartin traces the current form of the statute to an amendment in 1952, which in his view demonstrated Congress's focus "in terms of limitations was on poisons that were *sui generis* capable of causing injury or death, much like a bomb or anthrax."[1] *Id.* at 8. In other words, in order to come within the statute, Mr. Kilmartin maintains that the contents of the mail must be capable of hurting someone "without any action beyond merely receiving and opening the mail." *Id.*

The Government responds by tracing the origin of § 1716 to 1909, when a predecessor statute was enacted. *Gov't's Opp'n* at 4. The Government argues that the federal Government has long had the authority to criminalize the misuse of the mails and specifically the sending of poison. *Id.* at 4-5. The Government points to

---

[1] The term, sui generis, means "of its own kind, individual, or like only to itself". BRYAN A. GARNER, GARNER'S DICTIONARY OF LEGAL USAGE at 862 (3d ed. 2011). By his use of the term, the Court takes Mr. Kilmartin to mean that the injury or death must have been caused by the contents of the mail or by the opening of the mail, not by a subsequent intervening, voluntary act.

7

the Postal Service regulations that explain that the "basic premise of the postal mailability laws is that anything which may kill or injure another is nonmailable." *Id.* at 6. It notes that under both the 1999 and 2012 versions of the Postal Service regulations, potassium cyanide is classified as a prohibited substance for purposes of mailability. *Id.* Attach. 2, *Hazardous, Restricted, and Perishable Mail*, Publication 52 at 187 (July 1999) and Attach. 3, *Hazardous, Restricted, and Perishable Mail*, Publication 52 at 227 (Dec. 2012).

Although Mr. Kilmartin quotes legislative history, there is no need to resort to legislative history to clarify statutory language that is already clear. *United States v. Great N. Ry.*, 287 U.S. 144, 154 (1932) (Cardozo, J.) ("We have not traveled, in our search for the meaning of the lawmakers, beyond the borders of the statute"). The First Circuit has repeatedly observed that a statutory analysis "begin[s] with the actual language of the statute". *Perez-Olivo v. Chavez*, 394 F.3d 45, 49 (1st Cir. 2005). If the language is unambiguous, the analysis stops there. Only when the language of the statute is unclear does the court turn to other sources, such as the "specific context in which [the] language is used, and the broader context of the statute as a whole." *Id.* (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)). Finally, if the court finds "that the statute as a whole does not resolve the ambiguity, we next check the legislative history of the statute to confirm our conclusion." *Id.* Here, as the language of the statute is clear, the Court need not go elsewhere to ascertain its meaning.

Furthermore, even if the Court accepts Mr. Kilmartin's contention that, in enacting some amendments to § 1716, some members of Congress were concerned with people like the notorious Unabomber, Ted Kaczynski, using the mail to send bombs that explode when opened, *see United States v. Kaczynski*, 239 F.3d 1108 (9th Cir. 2001), or making sure that postal workers were not injured while they transported the mail, it does not follow that the members of Congress were unconcerned with the actions of people like Sidney Kilmartin who are charged with using the mail to send cyanide in an attempt to kill or harm the recipient.

The problem with Mr. Kilmartin's second argument is that nothing on the face of § 1716 supports his restrictive interpretation. Tracking the language of the statute, count one of the indictment alleges that Mr. Kilmartin "knowingly, and with the intent to kill or injure another, deposited for mailing and delivery something declared nonmailable by Title 18, United States Code, Section 1716, not in accordance with rules and regulations prescribed by the United States Postal Service." *Indictment* at 1. By insisting that the statute really means that, if poison, the contents of the mailed letter must—like anthrax—be capable of committing injury or death with the mere opening of the mail, Mr. Kilmartin is reading language into this statute that simply is not there. Section 1716(j)(2) does not say "deposits for mailing or delivery . . . with intent to kill or injure another <u>only by virtue of the receipt and opening of the mail</u>." It says only "deposits for mailing or delivery . . . with intent to kill or injure another." The essence of the statute is to criminalize depositing something that the Postal Service has prohibited in the mail with the intent to kill or

9

injure someone else. Similarly, count two tracks the language of count one, adding only the "resulted in death of [a] person" language for the potential enhanced penalty. *Id.* at 2.

Moreover, even though Mr. Kilmartin may be correct that potassium cyanide does not act like anthrax or a mail bomb, there is nothing on the face of the indictment that would allow the Court to make a factual assumption about how potassium cyanide works to cause harm. In effect, Mr. Kilmartin's argument is grounded not on "the facial validity of the indictment", but upon "the government's substantive case", which at this stage in the proceedings, the Court may not consider. *Ngige*, 2005 U.S. App. LEXIS 4233 at *10.

Finally, even accepting Mr. Kilmartin's factual premise about the characteristics of potassium cyanide, in listing cyanide as a prohibited substance for purposes of mailability under its regulations pursuant to this statute, the Postal Service prohibited the mailing of a poison that—according to Mr. Kilmartin—does not explode or cause immediate harm with the mere opening of the package.

In light of the plain language of the statute and the allegations in the indictment, the Court rejects Mr. Kilmartin's attempt to rewrite § 1716(j)(2) and (3) to insert language that is not there, to press an interpretation not justified by the language that is there, or to consider assumed facts not alleged in the indictment.

### 2. Whether the Mailing was Made with the Intent to Kill and Whether it Resulted in Death

As Mr. Kilmartin phrases his next issue—"There is no Federal jurisdiction over the alleged facts of Kilmartin's case because the mailing was not made with an intent

10

to kill and did not result in death"—it is a non-starter because he conflates jurisdiction with sufficiency of the evidence. *Def.'s Mot.* at 9. The indictment alleges that Mr. Kilmartin did precisely what he now says the Government is unable to prove. But in ruling on his motion, the Court must accept the allegations in the indictment as true and the Court neither "test[s] the sufficiency of the evidence behind the indictment's allegations", *Guerrier* at 4, nor attempts to resolve facts that require "a trial on the merits." FED. R. CRIM. P. 12(a).

Mr. Kilmartin goes on to assert that once the cyanide left the package, federal jurisdiction over the poison evaporated. *Def.'s Mot.* at 10 ("There can be no federal interest once the mail has been opened and the recipient endeavors to use the contents of the package at some later point to commit suicide of his own free-will"). Likening the mailing of poison to a victim who later mixes it up and ingests it, to the limitations on federal jurisdiction in *United States v. Lopez*, 514 U.S. 549, 561 (1995), the Gun-Free School Zones Act of 1990 case, *United States v. McCormack*, 31 F. Supp. 2d 176 (D. Mass. 1998), a case involving the bribery of a state official with federal funds, and *United States v. Nippon Paper Industries Co., Ltd.*, 109 F.3d 1 (1st Cir. 1997), a case involving the reach of the Sherman Act over foreign corporations, Mr. Kilmartin claims that the necessary nexus between the mail and federal jurisdiction was broken when the victim voluntarily removed the cyanide from the package, and later deliberately mixed and voluntarily ingested it. *Id.* at 10-11.

Mr. Kilmartin's case analogies are strained at best. Here, the necessary nexus between federal authority and the criminalized act is the alleged use of the United

States mail, traditionally a federal concern, to perpetrate the crime. Indeed, the United States Constitution grants Congress the power "to establish post offices and post roads." U.S. CONST. art. I, § 8. Arguably, if the victim's ingestion of the poison were substantially removed in time, distance or recipient from the mailing of the package, at least an argument could be made that a federal nexus has been broken, but the allegations in the indictment do not allow for such an inference. Finally, in *Nippon*, one of the cases Mr. Kilmartin cites, the First Circuit reversed the district court's dismissal of the indictment and remanded the case to the district court for further proceedings, a result that hardly favors him. *Nippon*, 109 F.3d at 9.

### D. Whether § 1716(j)(3) is Void for Vagueness Under the Due Process Clause

Mr. Kilmartin challenges § 1716(j)(3) on the grounds that the phrase "[w]hoever is convicted of any crime prohibited by this section, which has resulted in the death of any person" is impermissibly vague as applied to his case.[2] He argues that the legislative history behind § 1716 demonstrates that Congress intended only to criminalize the mailing of nonmailable matter that was directly linked with a resulting death, not to criminalize the mailing of nonmailable matter that was followed by intervening and voluntary acts of suicide. He offers no other source of authority to support his as-applied challenge to the statute.

---

[2] Mr. Kilmartin also argues that the rule of lenity and the doctrine of unforeseeable and retroactive judicial expansion also apply to his case. Because Mr. Kilmartin focuses his arguments exclusively on the interpretation of § 1716's language, and because, generally, "statutory ambiguity is the linchpin of a fair warning challenge," *United States v. Hussein,* 351 F.3d 9, 15 (1st Cir. 2003), the Court focuses its analysis on Mr. Kilmartin's vagueness challenge. Moreover, once the Court determines, as it has, that the statute is unambiguous, the rule of lenity does not apply. *Nippon*, 109 F.3d at 7-8 ("[T]he rule of lenity is inapposite unless a statutory ambiguity looms").

12

The Fifth Amendment's Due Process Clause requires that the conduct for which a person is held criminally responsible "be prohibited with sufficient specificity to forewarn of the proscription of said conduct." *United States v. Anzalone*, 766 F.2d 676, 678 (1st Cir. 1985). It is well-settled that due process requires that criminal statutes "give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden." *Hussein*, 351 F.3d 9 at 13 (1st Cir. 2003). A criminal statute "fails to provide fair notice if a person of ordinary intelligence, examining only the language of the statute, would be in some way surprised that it prohibited the conduct in question." *Sabetti v. Dipaolo*, 16 F.3d 16, 17 (1st Cir. 1994) (internal citations and quotations omitted). The void-for-vagueness doctrine mandates that a statute define the crime "with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). However, fair notice does not require "an explicit or personalized warning" and it "neither excuses professed ignorance of the law nor encourages deliberate blindness to the obvious consequences of one's actions." *United States v. Arcadipane*, 41 F.3d 1, 5 (1st Cir. 1994). "Outside the First Amendment context, we consider 'whether a statute is vague as applied to the particular facts at issue,' for a defendant 'who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others.'" *United States v. Zhen Zhou Wu*, 711 F.3d 1, 15 (1st Cir. 2013) (quoting *Holder v. Humanitarian Law Project*, 561 U.S. 1, 18-19 (2010)).

The parties do not cite, and the Court could not find, any authority discussing whether § 1716(j)(3) is unconstitutionally vague because of its failure to expressly indicate it applies to death resulting from assisted suicide. The Government has not cited any cases where § 1716(j)(3) has been applied to assisted suicide and the reported cases on this particular subsection of the statute exclusively address mail bomb-type cases. Furthermore, § 1716 does not define "results in the death". This dearth of caselaw leaves the Court in uncharted territory.[3] Again, the Court finds guidance in a plain language interpretation of the statute.

The narrow issue is whether the phrase "resulted in the death" is so vague as to violate the due process clause of the fifth amendment. The Supreme Court directs that "[i]n determining the scope of a statute, we look first to its language, giving the words used their ordinary meaning". *Moskal v. United States,* 498 U.S. 103, 108 (1990) (internal citations omitted).

Preliminarily, the Court observes that it would come as no surprise to the average person that the federal government would criminalize the misuse of the U.S. mails to distribute potentially lethal poison. This statute or its predecessor has been in force since at least 1909 to keep "[a]ll kinds of poisons" or "materials of whatever

---

[3] As in Mr. Kilmartin's jurisdictional argument, the parties heavily dispute how much weight to give congressional intent in this analysis. Mr. Kilmartin insists that Congress intended only to criminalize death that results from the mailing of nonmailable matters that are injurious by themselves alone. Unsurprisingly, the Government disagrees. Mr. Kilmartin's argument rests on a vagueness challenge to the statute, and evidence of legislative intent is inappropriate, however, in vagueness inquiry. *See United States v. Harriss*, 347 U.S. 612, 617 (1954) (under vagueness doctrine, statute must be judged only on its face); *United States v. Colon–Ortiz*, 866 F.2d 6, 9 (1st Cir. 1989) ("It is not enough for congressional intent to be apparent elsewhere if it is not apparent by examining the language of the statute"). This makes a good deal of sense considering that Mr. Kilmartin's argument is that he could not have possibly anticipated that his conduct was criminal; the law does not expect people to know legislative history, only that they know the contents of statutes.

kind which may kill, or in any wise hurt, harm, or injure another" from being "conveyed in the mails." Act of Mar. 4, 1909, ch. 321, § 217. Furthermore, this statute or its predecessor has been used to charge and convict others for conduct similar to the conduct in this case, although without the claimed resulting death. *See Murray v. United States*, 247 F. 874 (4th Cir. 1917) (affirming conviction for mailing strychnine); *Estabrook v. King*, 119 F.2d 607 (8th Cir. 1941) (rejecting habeas corpus petition for defendant convicted to mailing arsenic). This is not an instance where a federal statute has been used to prosecute activity that is an awkward fit with the statutory language. *Yates v. United States*, -- U.S. --, 135 S.Ct. 1074 (Feb. 25, 2015) (reversing a conviction for the retention of an undersized fish as a "tangible object" under a provision of the Sarbanes-Oxley Act). Moreover, it is logical that if § 1716 has been used to prosecute persons who misuse the mail to cause harms less grievous than death, the statute would also criminalize the same activity if death results.

Nevertheless, because no court has analyzed "resulted in the death" in the context of § 1716, the Court turns to caselaw interpreting federal drug laws, which contain a similar enhanced penalty provision for the distribution of an illegal drug that results in the death of a recipient.[4] This seems like a fair comparison for at least four reasons. First, the plain language of § 841(b)(1)(A) is nearly identical to the language in § 1716. Section 841 provides an enhanced penalty "if death or serious bodily injury results" from the use of distributed drugs. 21 U.S.C. § 841(b)(1)(A).

---

[4] The enhanced penalty for death resulting from a drug transaction is not the only such criminal statute. *See e.g.* 18 U.S.C. § 2119(3) (carjacking that results in death); *United States v. Figueroa-Cartagena*, 612 F.3d 69 (1st Cir. 2010).

15

Second, both statutes involve substances that are potentially lethal if ingested. Third, the enhanced penalty language in § 841 is similar to the language in § 1716. *Compare* § 841(b)(1) ("if death or serious bodily injury results from the use of such substance[, the penalty] shall be not less than 20 years or more than life"), *with* § 1716 ("which has resulted in the death of any person, shall be subject also to the death penalty or to imprisonment for life"). Fourth, the conduct in this case is similar to a drug transaction. Here, the indictment alleges that Mr. Kilmartin illegally sent poison to Mr. Denton, and that Mr. Denton's use of that poison resulted in his death; a typical analogous indictment in an illegal drug transaction case alleges that "the death of [the victim] resulted from the use of the methadone so distributed." *See United States v. Kenney*, No. CR-07-66-B-W, *Indictment* at 12 (ECF No. 1).

Furthermore, the enhanced penalty provisions of § 841 have been applied in cases involving suicide. At least one court applied the enhanced penalty in § 841 when the defendant drug dealer's customer-victim died, possibly as a result of suicide by overdosing, finding that "[s]uicide through heroin overdose meets the statute's terms, because it is a 'death resulting from the use of' the heroin . . . ." *Zanuccoli v. United States*, 459 F. Supp. 2d 109, 112 (D. Mass. Nov. 2, 2006). Another court affirmed the application of § 841's enhanced penalty to a defendant who delivered methadone to a victim who later used the drug to commit suicide. *See United States v. Houston*, 406 F.3d 1121 (9th Cir. 2005). Additionally, although the standards for the two statutes are arguably different, courts have applied the enhanced penalties in § 841 where the drug distribution resulted in death further downstream than the

instant case. *See United States v. De La Cruz*, 514 F.3d 121, 136-38 (1st Cir. 2008) (Defendant supplied heroin to a customer, who sold it to another person, who sold it to a third person who ingested the heroin and died); *United States v. McIntosh*, 236 F.3d 968, 970-71 (8th Cir. 2001) (Defendant's girlfriend provided her daughter methamphetamine that defendant manufactured, and the defendant's girlfriend's daughter died as a result of using the drug); *United States v. Robinson*, 167 F.3d 824, 831-32 (3d Cir. 1999) (defendant distributed heroin to a customer who in turn distributed it to another person who overdosed and died).

In addition, the Court notes that to prove its case, the Government must satisfy the specific intent requirement of § 1716(j)(2), which the Government will have to prove in order to prove § 1716(j)(3), and which provides an additional hurdle to Mr. Kilmartin's vagueness challenge. Specifically, the Government will have to prove at trial that Mr. Kilmartin mailed the cyanide to Mr. Denton with the intent to harm or kill him. This is different from § 841, which contains no specific intent element required to trigger the enhanced penalty when death "results" from the defendant's conduct. Moreover, the requirement of intent to kill makes it less likely that the law failed to put Mr. Kilmartin on notice that his conduct was unlawful. *See Screws v. United States*, 325 U.S. 91, 101 (1945) ("The Court, indeed, has recognized that the requirement of a specific intent to do a prohibited act may avoid those consequences to the accused which may otherwise render a vague or indefinite statute invalid").

Based on its plain language interpretation of § 1716, the Court concludes that the statute is sufficiently clear to provide reasonable notice of the circumstances that

will lead to an enhanced penalty. An ordinary person would have fair notice that sending poison – not just once, but twice, as is alleged in this case – to a suicidal person who uses the poison to kill himself, is forbidden by law. The Court recognizes that in some cases it is possible that the death that "results" from the violation of § 1716(j)(2) may be so remote a consequence from Mr. Kilmartin's criminal conduct that the Court might conclude it would not be consistent with congressional intent to apply the life imprisonment sentence. *See Robinson*, 167 F.3d at 831-2. But this is a matter of evidence, not a matter of law. At this early stage, whether the Government is able to meet its burden of proof on the elements of the charged crimes does not concern the Court.

In summary, the Court concludes that the indictment is sufficient to confer jurisdiction on this Court, and that § 1716(j)(3) is an unambiguous criminal statute that prohibits conduct that the federal government is not only free to regulate but has done so.

## IV. CONCLUSION

The Court DENIES Sidney Kilmartin's Motion to Dismiss Indictment (ECF No. 36).

SO ORDERED.

                                        /s/ John A. Woodcock, Jr.
                                        JOHN A. WOODCOCK, JR.
                                        UNITED STATES DISTRICT JUDGE

Dated this 25th day of March, 2015