UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | )   1:14-cr-00129-JAW |
| | ) |
| SIDNEY P. KILMARTIN | ) |

**ORDER DENYING DEFENDANT'S MOTION IN LIMINE**

With trial looming, Sidney Kilmartin moves to preclude the Government from introducing email statements made by Andrew Denton, as well as expert testimony of toxicologist Dr. Cynthia Morris-Kukoski. The Court rules that the email statements by the late Andrew Denton are not hearsay and are admissible and that the testimony of Dr. Morris-Kukoski is admissible subject to the Defendant's specific objections of prejudice.

**I.    BACKGROUND**

Sidney Kilmartin is charged in a fifteen count indictment with mail fraud, wire fraud, retaliation against a witness, witness tampering, and mailing injurious items resulting in death. *Indictment* (ECF No. 3).[1] The Government has alleged that Mr. Kilmartin engaged in a scheme of defrauding individuals he had encountered on the internet by promising to mail potassium cyanide to these people, accepting their money, and then mailing Epsom salts instead of potassium cyanide. *Gov't's Trial*

---

[1] Counsel informed the Court that Mr. Kilmartin intends to plead guilty to nine of the fifteen counts in the superseding indictment, specifically Counts 2, 3, 4, 6, 8, 9, 10, 11, and 13; the Court scheduled the case for a Rule 11 hearing on those counts on October 3, 2016 just before jury selection on the remaining counts. *See Notice of Hr'g* (ECF No. 131).

*Brief* at 3-4 (ECF No. 103). With respect to Mr. Denton, the Government has further alleged that after Mr. Denton filed a complaint against Mr. Kilmartin for mailing him Epsom salts, Mr. Kilmartin sent him actual potassium cyanide, which Mr. Denton used to kill himself. *Id.*

On September 12, 2016, Mr. Kilmartin filed a motion in limine to preclude the Government from introducing at trial emails written by Mr. Denton and expert testimony of Dr. Morris-Kukoski. *Def.'s Mot. in Limine* (ECF No. 112) (*Def.'s Mot.*). As to the emails written by Mr. Denton, Mr. Kilmartin argues that these statements represent inadmissible hearsay and that they do not fit within any exception. *Id.* at 2-5. Specifically, he argues that the statements do not fall within Rule 804(b)(2)'s exception for statements made under belief of imminent death because the email correspondence occurred many days before Mr. Denton's suicide and because it is undisputed that Mr. Denton killed himself. *Id.* at 3. Additionally, he argues that the statements do not fit Rule 804(b)(6)'s exception for statements offered against a party that wrongfully caused the declarant's unavailability because Mr. Denton caused his own death by suicide and there were no pending charges against Mr. Kilmartin at the time of Mr. Denton's death. *Id.* at 3-4. Mr. Kilmartin also claims that the correspondence would cause a Confrontation Clause issue. *Id.* at 4.

As for Dr. Morris-Kukoski's testimony, Mr. Kilmartin argues that the testimony is not relevant to any element of any offense with which Mr. Kilmartin is charged and that the Government already has several witnesses prepared to testify that Mr. Denton died from his own ingestion of a lethal amount of potassium cyanide.

*Id.* at 5. Mr. Kilmartin further argues that even if the testimony has some probative value, that value is outweighed by the prejudice that would be created if Dr. Morris-Kukoski is allowed to testify about what potassium cyanide does to the body. *Id.* at 6.

The Government filed its opposition to Mr. Kilmartin's motion on September 19, 2016. *Gov't's Opp'n to Def.'s Mot. in Limine* (ECF No. 122) (*Gov't's Opp'n*). The Government first argues that Mr. Denton's statements should be admitted. *Id.* at 2. Citing caselaw, the Government maintains that the statements are not hearsay because they provide context in which to understand Mr. Kilmartin's own statements and because they are probative as res gestae of Mr. Kilmartin's fraud. *Id.* at 2-3. The Government states that even if the statements constitute hearsay, they are admissible pursuant to the exceptions for dying declarations and forfeiture by wrongdoing. *Id.* at 3-5.

The Government also argues that Dr. Morris-Kukoski should be allowed to testify because the testimony is relevant and not unduly prejudicial or cumulative. *Id.* at 5-8. The Government outlines the elements of the offenses charged, presents its theory of the case, and explains how Dr. Morris-Kukoski's testimony will assist the jury in determining the relevant facts and issues. *Id.*

## II. DISCUSSION

### A. Email Statements by Andrew Denton

Mr. Kilmartin seeks to exclude the email correspondence from Mr. Denton on the grounds that it is hearsay that does not fall within any exception. The Court disagrees. Hearsay is a statement that "(1) the declarant does not make while

3

testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." FED. R. EVID. 801(c). The First Circuit has found that out-of-court statements offered not to prove the truth of the matter asserted, but merely to show context, are not hearsay. *United States v. Cruz-Díaz*, 550 F.3d 169, 176 (1st Cir. 2008) (statement offered for the limited purpose of showing what effect the statement had on the listener is not hearsay); *United States v. Bailey*, 270 F.3d 83, 87 (1st Cir. 2001) (statement "offered to show the effect of the words spoken on the listener (e.g., to supply a motive for the listener's action) is not hearsay"); *United States v. Catano*, 65 F.3d 219, 225 (1st Cir. 1995) (other parts of a conversation that are "reciprocal and integrated utterance(s) . . . reasonably required to place [the defendant's] admissions into context" are not hearsay).

Here, the emails from Mr. Denton contain complaints to Mr. Kilmartin, which the Government seeks to introduce in order to provide context for Mr. Kilmartin's own correspondence[2] and to show the effect on Mr. Kilmartin, namely his decision to reveal his source and to send Mr. Denton real cyanide. To the extent that the Government seeks to introduce the emails for this purpose, they are not hearsay.

Moreover, even if the Government does introduce Mr. Denton's emails for the truth of the matters asserted in them, they would be admissible as a hearsay exception. Rule 804 provides an exception to the hearsay rule when a declarant is unavailable as a witness and the statement is being "offered against a party that wrongfully caused – or acquiesced in wrongfully causing – the declarant's

---

[2]   Mr. Kilmartin's own emails are admissible as an opposing party statement pursuant to FED. R. EVID. 801(d)(2)(A).

4

unavailability as a witness, and did so intending that result." FED. R. EVID. 804(b)(6). Mr. Denton is unavailable within the meaning of this Rule as he is dead. *See* FED. R. EVID. 804(a)(4). Even though Mr. Denton died of his own hand, the Government has alleged that Mr. Kilmartin sold the poison that Mr. Denton used to kill himself. The rationale underlying this rule is that "courts will not suffer a party to profit by his own wrongdoing." *United States v. Houlihan*, 92 F.3d 1271, 1279 (1st Cir. 1996).

It is true that the Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend VI. However, the First Circuit has held:

> [W]hen a person who eventually emerges as a defendant (1) causes a potential witness's unavailability (2) by a wrongful act (3) undertaken with the intention of preventing the witness from testifying at a future trial, then the defendant waives his right to object on confrontation grounds to the admission of the unavailable declarant's out-of-court statements at trial.

*Houlihan*, 92 F.3d at 1280; *see also Giles v. California*, 554 U.S. 353, 358-59 (2008). The government need only prove the predicate facts essential to a waiver by a preponderance of the evidence. *Houlihan*, 92 F.3d at 1280.

In this case, a grand jury has already found probable cause to indict Mr. Kilmartin for witness tampering and retaliation. Additionally, the Government states that it will produce evidence at trial that Mr. Kilmartin intended to prevent Mr. Denton from cooperating and testifying against him by sending him cyanide, such as emails from Mr. Kilmartin to Mr. Denton in which Mr. Kilmartin expresses concern that the FBI may be investigating him and asks Mr. Denton to destroy evidence of their interaction before killing himself. *Gov't's Opp'n* at 4-5. Given this

information, the Court finds that there is probable cause to establish that the Defendant caused Mr. Denton's unavailability, by a wrongful act, undertaken to prevent him from testifying or cooperating with law enforcement. Therefore, the Court concludes that the email correspondence by Mr. Denton is admissible.[3]

### B. Expert Testimony of Dr. Cynthia Morris-Kukoski

Mr. Kilmartin also seeks to exclude the expert testimony of Dr. Morris-Kukoski on the grounds that her testimony is irrelevant and that any probative value it may have, if any, is outweighed by the prejudice it will create.

Generally, all relevant evidence is admissible, unless precluded by the Constitution or federal laws or rules. FED. R. EVID. 402. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and the fact is "of consequence in determining the action." FED. R. EVID. 401. Expert testimony is admissible if it meets three requirements: (1) the expert is qualified to testify as an expert by "knowledge, skill, experience, training, or education"; (2) the expert's testimony concerns "scientific, technical, or other specialized knowledge"; and (3) the testimony will "help the trier of fact to understand the evidence or to determine a fact in issue." *See* FED. R. EVID. 702; *United States v. Shay*, 57 F.3d 126, 132 (1st Cir. 1995). Mr. Kilmartin does not question Dr. Morris-Kukoski's qualifications. He only questions the relevance of her testimony and whether it would assist the jury because in his view the Government "has several

---

[3] The Court does not reach the Government's argument that the email statements would be admissible under Rule 804(b)(2) as a dying declaration.

6

witnesses prepared to testify that Mr. Denton died from his own ingestion of a lethal amount of potassium." *Def.'s Mot.* at 5.

To prove count one, mailing injurious articles resulting in death, count fourteen, witness tampering, and count fifteen, witness retaliation, the Government bears the burden to prove that Mr. Kilmartin killed Mr. Denton. *See* 18 U.S.C. § 1716(j)(3); 18 U.S.C. § 1512(a)(1)(A), (C); 18 U.S.C. § 1513(a)(1)(B), (a)(2)(A). In each of these counts, the Government bears the burden to prove beyond a reasonable doubt that Mr. Kilmartin caused Mr. Denton's death. The "prosecution is entitled to prove its case by evidence of its own choice." *Old Chief v. United States*, 519 U.S. 172, 186 (1997); *United States v. Dudley*, 804 F.3d 506, 516 (1st Cir. 2015). Simply because Mr. Kilmartin asserts that the Government has sufficient proof of this element of the charged crimes, Mr. Kilmartin's view of the sufficiency of the evidence does not control the Government's decisions as to what evidence to present to prove an essential element of its case. The First Circuit has held:

> The fundamental question a court must answer in determining whether a proposed expert's testimony will assist the trier of fact is whether the untrained layman would be qualified to determine intelligently and to the best degree the particular issue without enlightenment from those having a specialized understanding of the subject matter involved.

*Shay*, 57 F.3d at 130. To answer this question, the Court must first determine whether the proposed testimony is relevant and fits the facts of the case. *Id.* at 132-33. Then, the inquiry shifts to whether the witness's opinions are based upon specialized skill, training, or experience. *Id.* at 133.

The Government argues that the testimony of Dr. Morris-Kukoski is relevant to three charged offenses and in doing so, presents its theory of the case:

> Mr. Kilmartin schemed to defraud his victims by pretending to be [an] ally who would provide them with the means to end their unhappy lives. More particularly, Mr. Kilmartin leads his victims to believe that he would provide them with deadly poison, potassium cyanide. In his correspondence with his victims, Mr. Kilmartin established his credibility and his victim's trust by speaking authoritatively about cyanide, the quality of the cyanide he had to offer, how much it took to kill a person of a given size and weight, how to ingest cyanide on an empty stomach accompanied by something acidic. With these representations, he misled his victims to trust he would supply them with the poison they sought and he misled many to send him money.

*Gov't's Opp'n* at 6. The Government states that Dr. Morris-Kukoski has studied the effects of cyanide on living human beings and has an understanding of the effects of cyanide, the manner in which it kills, and what constitutes a lethal dose, and therefore her testimony will help the jury understand matters they are not likely to have knowledge of or experience with.

The Court agrees. To the extent that the Government's theory is that Mr. Kilmartin, in devising a scheme to defraud, established his credibility and garnered his victim's trust by speaking authoritatively about cyanide, Dr. Morris-Kukoski's testimony will assist a trier of fact in determining whether Mr. Kilmartin, in fact, spoke authoritatively about cyanide, a topic on which a layman may not be well-versed.

Furthermore, the Government is required to prove causation: that it was Mr. Kilmartin's cyanide and not some agent that actually caused Mr. Denton to die. In other words, the Government must prove that the amount of cyanide ingested by Mr.

Denton did not merely set the stage for his death by other causes, for example a heart attack, but was actually the cause of his death. Dr. Morris-Kukoski's proposed testimony goes directly to an element of the crimes the Government has charged.

At the same time, the Court acknowledges Mr. Kilmartin's argument that the probative value of portions of this testimony could potentially be outweighed by prejudice depending upon the extent to which Dr. Morris-Kukoski describes what potassium cyanide does to the body. A court has discretion to exclude expert testimony, even if admissible under Rule 702, if "its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403; *United States v. Lopez-Lopez*, 282 F.3d 1, 15 (1st Cir. 2002). This danger is further supported by the fact that "[e]xpert evidence can be both powerful and quite misleading because of the difficulty in evaluating it." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 595 (1993).

Without more information about the specifics of Dr. Morris-Kukoski's testimony, the Court is not currently in a position to make a complete judgment on the full scope of that testimony. The Court concludes that Dr. Morris-Kukoski will be allowed to testify as to the impact of cyanide on the human body. However, in order to give the Defendant an opportunity to make the argument that a particular portion of the doctor's testimony would be more prejudicial than probative, the Court will reserve judgment as to the extent to which her testimony as to the details of the resulting death will be admissible. If the Defendant wishes to press the issue, the

9

Court will hear Dr. Morris-Kukoski's proposed testimony outside the presence of the jury and rule more specifically at that time.

### III.   CONCLUSION

The Court DENIES in part the Defendant's Motion in Limine (ECF No. 112). The Court concludes that Andrew Denton's email correspondence and Dr. Morris-Kukoski's proposed expert testimony are admissible. However, if the Defendant wishes to object to a specific portion of Dr. Morris-Kukoski's testimony as more prejudicial than probative under Rule 403, the Court will hold a brief evidentiary hearing outside the presence of the jury before she testifies.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR
UNITED STATES DISTRICT JUDGE

Dated this 30th day of September, 2016