```
                       UNITED STATES DISTRICT COURT
                            DISTRICT OF MAINE



 UNITED STATES OF AMERICA      )
                               )
                               )         CRIMINAL ACTION
          vs.                  )
                               )           Docket No.
                               )         1:14-cr-00129-JAW
 SIDNEY P. KILMARTIN           )
                               )        TELEPHONE CONFERENCE
               Defendant.      )
```

TRANSCRIPT OF PROCEEDINGS

   Pursuant to notice, the above-entitled matter came on for TELEPHONE CONFERENCE before the HONORABLE JOHN A. WOODCOCK, JR., District Judge, in the United States District Court, Bangor, Maine, on the 1st day of March, 2016, at 3:28 p.m.


APPEARANCES:

For the Government:                     Halsey B. Frank, Esquire

For the Defendant:                      J. Martin Ridge, Esquire



                    Melissa L. Merenberg, RPR
                       Official Court Reporter

Proceedings recorded by mechanical stenography; transcript produced by computer.

1           (Counsel present by telephone.)
2                THE COURT:  Hello.
3                MR. FRANK:  Hello.
4                THE COURT:  Yes, this is --
5                MR. RIDGE:  Hello.
6                THE COURT:  Hello.
7                MR. FRANK:  Yes, hello.  This is Halsey Frank here.
8                MR. RIDGE:  And Marty Ridge.
9                THE COURT:  All right.  This is the matter of United
10   States v. Sidney P. Kilmartin, which is 14-cr-129-JAW.
11   Counsel have already entered their appearances.
12        I received your motion, and I have some questions
13   concerning the motion.  I note that this case has been pending
14   since November of 2014.  And in October of 2015, the Court, at
15   the request of the prosecutors, set the case ahead six months
16   on the representation that the prosecution needed a date
17   certain as did the defense for trial, and I set it ahead for
18   May of 2016, clearing the docket for the entire month to allow
19   counsel to proceed.  I now get this motion to continue it
20   until August.  I understand there was a superseding indictment
21   that was filed on December 9th.  And, Mr. Ridge, you entered
22   an appearance on December 18 of 2015.
23                MR. RIDGE:  Correct.
24                THE COURT:  But that still has given both the
25   prosecution and defense four and a half months to prepare for

1  trial.  The psychiatric issue that had been raised earlier has
2  been resolved.  And I'm curious about why it is that the
3  superseding indictment, which does contain additional counts,
4  would necessarily have required evidence that would not have
5  been in play in the original indictment.  So that's the first
6  series of questions.  And then I have some questions about
7  both timing and location.
8      So why don't you tell me why it is that the earlier --
9  the Court's indulgence of counsel and basically clearing the
10 docket for the entire month of May to allow you to try the
11 case, then I have to go down and clear another month out later
12 on.
13          MR. RIDGE:  Well, Your Honor, I am not sure I can
14 expound too much more than what I have in the motion.  I mean,
15 the case candidly is more voluminous and much more difficult
16 than I had anticipated it was going to be.  I didn't know the
17 volume of information that was available at the time I entered
18 my appearance.  I believe there are like 15 volumes of
19 discovery information, not all of which is going to be
20 relevant to trial, much of it is the psychiatric information
21 that you correctly point out is not -- not in play at the
22 moment.  But from my perspective, it's -- I don't want to say
23 it's overwhelming, but it's huge.  And I just -- I worry that
24 I can't be prepared to do the job that Mr. Kilmartin needs by
25 May 1st.  That's all I can say.

1          THE COURT:  Mr. Frank, you were the one who, I
2    think, instigated the special assignment for May and I acceded
3    to your request, and as I say, it's unusual to get, in a
4    criminal case, a date certain and a date certain for trial
5    that's going to last three months, and now I hear you don't
6    object to a continuance that basically puts the Court back to
7    square one.
8          MR. FRANK:  Your Honor, I -- I did request a date
9    certain.  That's because we will be bringing 15 to 20
10   witnesses to Maine from away, the majority of those from
11   England.  And my thought was that given the logistics of that,
12   we needed a date certain, as well as the schedule that I had
13   proposed to make sure that no issue cropped up at the last
14   minute after witnesses had traveled.
15      So, yes, I did request that, and I'm grateful to the
16   Court for accommodating me in that regard.  I -- I mean, the
17   Government can be ready in May.  I'm -- I -- I've met
18   Mr. Ridge at least once in person, and I do think the case
19   is -- I mean, it involves a lot of material.  And I am mindful
20   of the need to give Mr. Kilmartin's attorney adequate time to
21   prepare.  I'm also mindful that Mr. Kilmartin's on his, I
22   guess, third -- Mr. Ridge is now his third attorney, so -- but
23   I guess that's -- unless you have further questions, I mean,
24   yes, we would very much like to have a date certain because of
25   the number of witnesses, but especially because of the number

1    of witnesses who we're going to have to bring from away.
2         And I -- I can -- the reason I am not opposing Mr.
3    Ridge's request is I agree with his assessment that the case
4    is -- is large to get your hands around and that he needs the
5    additional time to do so.
6         THE COURT: Right. I think actually Mr. Kilmartin
7    is on his fourth lawyer.
8         MR. FRANK: Well, I know he had a couple right -- he
9    may have had -- that may be, Your Honor, yes.
10        THE COURT: Well, not may be, it is. And my concern
11   too is that I set it ahead and Mr. Kilmartin decides that
12   Mr. Ridge isn't the person he wants and then lo and behold, we
13   get yet another lawyer, and they don't have time to prepare
14   for it, and we're talking about months and months and months
15   down the road. I know that's -- that's always a risk, but in
16   this kind of case where he's already run through three lawyers
17   and he's on his fourth, I think it's a heightened risk.
18        MR. FRANK: I understand the Court's uncertainty,
19   Your Honor. I -- I understand. I --
20        MR. RIDGE: Your Honor, I don't know how to predict
21   what Mr. Kilmartin's going to do. I do have a history with
22   him, having represented him in a major criminal case here in
23   Cumberland County that had -- to which he was found not guilty
24   by reason of insanity, so I mean, he and I have a -- what I
25   perceive to be an understanding about how one another works

1   and, I think, a pretty good working relationship.  Having said
2   that, I -- you know, he is a rather unpredictable person, but
3   I think he feels comfortable working with me, and I don't, at
4   this point, have any reason to think there is going to be yet
5   another effort to change counsel.
6              THE COURT:  Okay.  Let's move to the next issue.
7   You want to try it in August, but I think you're -- I think
8   that's inadvisable, and the reason is August is the one time
9   of year that virtually every single juror who is called up is
10  going to have an excuse of why they shouldn't and can't and
11  basically don't want to sit on a three-week trial.  And this
12  is a case, it seems to me, that in selecting a jury when they
13  hear the facts of the case there are an awful lot of people
14  who are going to run for the exit, and it's going to be hard
15  to select a jury.  We are going to have to bring in -- if it's
16  going to be tried in August, virtually half the state of
17  Maine.  And I think it's particularly -- of all the months you
18  could have chosen, I think August and maybe December are the
19  two months where virtually nobody wants to serve on a jury,
20  and I don't think it's very advisable to have a bunch of
21  people who don't want to sit on the jury sitting on the jury.
22       So I'm concerned about -- if this were a one-week trial,
23  if it were a shorter trial, if it didn't resonate in such a
24  potentially emotional set of evidence, it would be an entirely
25  different thing, but I think you're ill-advised to request

1    that it be set for August.  I think of all the months it may
2    be, along with December, the worst you could have chosen.
3         Is there some reason you've chosen August, or did you
4    just pull that out of the air?
5              MR. FRANK:  I guess I will defer to Marty to start,
6    Your Honor.  I think that was the minimum he felt he needed,
7    but I -- Marty --
8              MR. RIDGE:  It was.  And I think --
9              MR. FRANK:  September was problematic from my
10   standpoint because when we started reaching out to our
11   witnesses to see about their availability, it seemed that
12   September was more problematic than August.  So from my
13   standpoint, that's why the Government preferred August to
14   September.
15        And, Marty, I interrupted you before you --
16             MR. RIDGE:  No, I -- I don't have any tremendous
17   preference for August if it's a jury problem.  I do know
18   Halsey had done some preliminary contacting with his
19   witnesses, and I think we, without considering the difficulty
20   that the Court just pointed out, concluded that that would
21   work better for the parties than July or September.
22             MR. FRANK:  But I don't think either of us -- that's
23   the explanation, Your Honor.
24             THE COURT:  So you say you're going to have
25   trouble -- my thought was that September would have been a

1  better month to try it simply because kids are back in school
2  and things have settled down, but I just can't imagine that
3  you're going find it easy to draw a jury for a three-week
4  trial in August. I think it's going to be really, really
5  hard.
6        MR. FRANK: Your Honor, I am not wed to August. I
7  don't mean to suggest I am. I just -- I think I have witness
8  problems in September because of witnesses in -- in England.
9  That was the feedback we were getting from witnesses in
10 England.
11       THE COURT: Well, do you want to make another try at
12 the possibility of September and see how -- how problematic
13 that might be?
14       MR. FRANK: I can, Your Honor, yes. I mean, I'm
15 certainly willing to. I mean, I know we've already explored
16 it somewhat, but we can go back to some of these witnesses and
17 press the point.
18       THE COURT: Right.
19       MR. FRANK: We are a little bit -- I mean, of
20 course, we can't compel them, so we're -- we're --
21       THE COURT: No, I understand. But if -- you know,
22 what I anticipate -- I would guess that most of the witnesses
23 that you're talking about are witnesses that would make an
24 effort to be at a trial like this.
25       MR. FRANK: Yes, Your Honor. I think -- I think

```
 1   they -- they -- they want to attend and participate.  I just
 2   think -- and I don't have all the details.  I didn't make
 3   these contacts myself directly.  Our witness assistants were
 4   reaching out and -- but I can reach out again and perhaps I
 5   will also, if it's agreeable with the Court, ask them about
 6   October, as well.
 7            THE COURT:  Right.  Okay.  I think if you're able to
 8   avoid a three-week trial in the middle of summer, you're just
 9   going to find it a lot easier, particularly this kind of
10   trial, a lot easier to select a jury.  It would have been, I
11   think, a snap in May.
12            MR. FRANK:  Well --
13            THE COURT:  Go ahead.
14            MR. FRANK:  I don't disagree with the Court's
15   assessment, Your Honor.  I think we were trying to -- we also
16   felt some urgency to reach it sooner than later and August
17   just seemed like -- again, starting with the first question
18   being when does the defense feel it could be ready, and August
19   seemed like the earliest we could do.  And as I say, I did
20   explore -- I have explored or at least through my victim-
21   witness assistants have explored September, but we will
22   explore it further.
23            THE COURT:  All right.  Well, you might as well, as
24   you say, explore October, as well, in the event some of your
25   critical witnesses can't make it in September.
```

1       MR. FRANK:  Yes, Your Honor.  I mean, I know the
2   toxicologist was one -- I know off the top of my head that the
3   forensic toxicologist, Alun Hutchings in England, was one of
4   those witnesses who was problematic in September, but we'll go
5   back to him again.
6       THE COURT:  Okay.  And the question of where it's
7   going to be tried, I'm sort of -- I've tried not to become
8   annoyed at that suggestion.  You really think that -- that the
9   Court -- that I should go down to Portland and live in a hotel
10  for three months (sic) in order to allow you to go home at
11  night?
12      MR. FRANK:  Your Honor, from the Government's
13  standpoint, again, a lot of this was the number of witnesses
14  we would be transporting here, but it's --
15      THE COURT:  It doesn't make any sense, Mr. Frank.  I
16  mean, you say that it would be easier to get people into
17  Portland than it is into Bangor, but the last I knew Bangor
18  has an airport and the -- the notion that Portland was going
19  to be an easier city to get a hotel room in in the middle of
20  August as opposed to Bangor seems to me to be questionable.
21      MR. FRANK:  Your Honor, again, I -- it's something
22  we discussed with the victim-witness people.  I think the
23  thought was the arrangements would be made now and there are
24  just more rooms here, but, again, I -- it's not -- we can do
25  it in either place for certain.

1      THE COURT:  No, you can do it in Bangor.
2      MR. FRANK:  We can do it in Bangor, yes, Your Honor.
3      THE COURT:  That's the answer.  I mean, the U.S.
4  Attorney's Office has an office in Bangor and they do have
5  some --
6      MR. FRANK:  It's a very large office, Your Honor,
7  yes.
8      THE COURT:  -- some people who could try the case
9  and they've chosen to assign you, which is fine with me,
10 Mr. Frank, you do a great job and are very careful, and I
11 admire your work, but if -- if the U.S. Attorney's Office
12 assigns someone to a Bangor case who is in the Portland
13 office, I expect that they will try the case in Bangor because
14 --
15     MR. FRANK:  Your Honor, I am happy to try the case
16 in Bangor.
17     THE COURT:  And, Mr. Ridge, of course, I have the
18 same feelings about you.  I remember you from way back along,
19 and I admire your intelligence and your ability, but you did
20 take a Bangor case, and it seems to me that you should be
21 prepared to try it in Bangor.
22     MR. RIDGE:  I agree with that, Your Honor.  I
23 certainly will be.
24     THE COURT:  All right.  So how do you want to leave
25 it?  I take it that you're going to re-explore, Mr. Frank,

1   the -- I take it first that if it were set for either
2   September or October, that the defendant would acquiesce to
3   that; is that correct, Mr. Ridge?
4         MR. RIDGE:  That's right.  That's absolutely true.
5         THE COURT:  Okay.  So let's try and we will wait to
6   hear from you, Mr. Frank, as to whether September is possible.
7   If it isn't, what I will do is specially assign it for
8   October, but this will be etched in stone.
9         MR. FRANK:  Yes, Your Honor.
10        MR. RIDGE:  Understood.
11        THE COURT:  There won't be another motion to
12  continue because now I've given basically two, six month
13  virtually continuances to allow counsel to ramp up on the case
14  and get it ready to go to trial.  So if I do set it again for
15  either September or October, it -- I will not be moved.
16        MR. FRANK:  Yes, Your Honor.
17        MR. Ridge:  Understood.
18        THE COURT:  Understood, Mr. Ridge?
19        MR. RIDGE:  Yes, yes, Your Honor.
20        THE COURT:  All right.  And that's plenty of time
21  for you, I take it, to do whatever you think you need to do in
22  order to get the case ready for trial.
23        MR. RIDGE:  It's ample time, Your Honor.
24        THE COURT:  All right.  Is there anything else we
25  need to -- how do we want to leave it, Mr. Frank?  How long is

1  it going to take you to check with the people in England?
2           MR. FRANK:  I will send an email now to the victim-
3  witness people, and we will start right away.  I am sure -- I
4  think -- could I have until next week?
5           THE COURT:  Sure.
6           MR. FRANK:  And I think that should be enough time.
7  It's just there is the time difference, and it takes a little
8  while to get word back and forth, but I think that should be
9  enough time and we should know -- one or the other of those
10 should be doable.
11          THE COURT:  And, Mr. Ridge, from what you know of
12 the case, are you going to have any difficulty trying it with
13 witnesses or anything of that sort in September or October?
14          MR. RIDGE:  No.  Either month is fine with the
15 defendant, Your Honor.
16          THE COURT:  Okay.  So we will wait to hear from --
17 what do you need, a week from today?
18          MR. FRANK:  Please, Your Honor.
19          THE COURT:  Okay.  If you need more time, just let
20 me know because we're talking about a fairly long continuance
21 anyway.
22          MR. FRANK:  Yes, Your Honor.
23          THE COURT:  So I will wait to hear from you.  And if
24 you tell me there's trouble in September, I will set it for
25 October.

14

```
 1            MR. FRANK:  Very good, Your Honor.
 2            THE COURT:  All right.
 3            MR. RIDGE:  Thank you.
 4            MR. FRANK:  Thank you.
 5            THE COURT:  Thank you, gentlemen.
 6       (The telephone conference was concluded at
 7  3:49 p.m.)
 8                         * * * *
 9                      CERTIFICATION
10      I certify that the foregoing is a correct transcript from
11  the record of proceedings in the above-entitled matter.
12
13
14  /s/ Melissa L. Merenberg              10/18/2018
    Melissa L. Merenberg, RPR             Date
15  Official Court Reporter
16
17
18
19
20
21
22
23
24
25
```