UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| SIDNEY KILMARTIN, )<br>)<br>  Petitioner )<br>)<br>v. )<br>)<br>UNITED STATES OF AMERICA, )<br>)<br>  Respondent ) | 1:14-cr-00129-JAW<br>1:21-cv-00100-JAW |

## RECOMMENDED DECISION ON 28 U.S.C. § 2255 MOTION

Petitioner moves pursuant to 28 U.S.C. § 2255 to vacate, set aside or correct his sentence. (Motion, ECF No. 309.) Following a jury trial,[1] Petitioner was convicted of mail fraud, wire fraud, mailing injurious articles resulting in death, and witness tampering; the Court sentenced Petitioner to 300 months in prison and five years of supervised release. (Judgment, ECF No. 263; Amended Judgment, ECF No. 307.) The First Circuit vacated the conviction for witness tampering and affirmed the other convictions and the sentence. *United States v. Kilmartin*, 944 F.3d 315 (1st Cir. 2019).

Petitioner claims he is entitled to habeas relief because he received ineffective assistance of counsel. The Government requests dismissal. (Response, ECF No. 326.)

Following a review of the record and after consideration of Petitioner's motion and the Government's request for dismissal, I recommend the Court grant the Government's request, deny Petitioner's request for relief, and dismiss Petitioner's motion.

---

[1] Petitioner pled guilty to several counts of mail fraud and wire fraud as to certain victims and proceeded to trial on other charges pertaining to another victim.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In November 2014, Petitioner was indicted for (1) knowingly and with intent to kill or injure another mailing something nonmailable, namely a poison, potassium cyanide, to an individual (Andrew Denton) in violation of 18 U.S.C. § 1716(j)(2) and (2) knowingly and with intent to kill or injure another mailing something nonmailable, namely a poison, potassium cyanide, to Mr. Denton which resulted in the death of a person in violation of 18 U.S.C. § 1716(j)(3). (Indictment, ECF No. 3.)

In December 2015, the grand jury issued a fifteen-count superseding indictment. (Superseding Indictment, ECF No. 85.) Count One alleged Petitioner knowingly mailed something nonmailable, namely a poison, potassium cyanide, which resulted in the death of Mr. Denton in violation of 18 U.S.C. § 1716(j)(3). (*Id.* at 1.) Counts Two through Thirteen charged Petitioner with mail and wire fraud in violation of 18 U.S.C. § 1341, alleging that he posed as a goldsmith to obtain potassium cyanide from a chemical supplier and devised a scheme to defraud five suicidal persons by pretending to sell them cyanide while in fact sending Epsom salts. (*Id.* at 2–4.) Count Fourteen charged Petitioner with witness tampering in violation of 18 U.S.C. § 1512(a)(1)(A) and (C), alleging that Petitioner killed Mr. Denton knowingly and with the intent to prevent Mr. Denton's testimony and communication to law enforcement regarding Petitioner's fraud scheme. (*Id.* at 4.) Count Fifteen charged Petitioner with witness retaliation in violation of 18 U.S.C. §§ 1513(a)(1)(B), (a)(2)(A), and 1111 for allegedly killing Mr. Denton with the intent to retaliate against him for providing information to law enforcement about the fraud scheme. (*Id.* at 4–5.)

In October 2016, just before trial was scheduled to begin, Petitioner pled guilty to the fraud charges related to the four victims other than Mr. Denton. (Change of Plea Hearing, ECF No. 142.) After a trial on the charges related to Mr. Denton, (ECF Nos. 144–49), the jury found Petitioner guilty on Counts One, Five, Seven, Twelve, and Fourteen, and the jury found Petitioner not guilty on Count Fifteen. (Jury Verdict, ECF No. 153.) Petitioner subsequently filed a motion for acquittal or a new trial, (ECF No. 162); the Court denied the motion after briefing and oral argument. (ECF No. 215.)

In May 2018, the Court sentenced Petitioner to 240 months in prison on Counts Two through Thirteen and 300 months in prison on Counts One and Fourteen, all sentences to be served concurrently. (Judgment, ECF No. 263.) The First Circuit affirmed the convictions and sentence as to all counts except for Count Fourteen, which conviction the First Circuit vacated because it determined certain evidence should have been excluded under Federal Rule of Evidence 403. *United States v. Kilmartin*, 944 F.3d 315, 323, 333–40 (1st Cir. 2019). After remand and on the Government's motion, the Court dismissed Count Fourteen and subsequently imposed the original sentence for each of the other charges. (Amended Judgment, ECF No. 307.) Petitioner then filed this § 2255 motion. (Motion, ECF No. 309; Supplemental Memorandum, ECF No. 312.)

## DISCUSSION

### A.   Legal Standards

A person may move to vacate his or her sentence on one of four different grounds: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "that the court was without jurisdiction" to impose its sentence; (3) "that the

3

sentence was in excess of the maximum authorized by law"; or (4) that the sentence "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a); *see Knight v. United States*, 37 F.3d 769, 772 (1st Cir. 1994).

*"[P]ro se* habeas petitions normally should be construed liberally in petitioner's favor." *United States v. Ciampi*, 419 F.3d 20, 24 (1st Cir. 2005) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). The burden is on the section 2255 petitioner to establish by a preponderance of the evidence that he or she is entitled to section 2255 relief. *David v. United States*, 134 F.3d 470, 474 (1st Cir. 1998); *United States v. DiCarlo*, 575 F.2d 952, 954 (1st Cir. 1978). When "a petition for federal habeas relief is presented to the judge who presided at the petitioner's trial, the judge is at liberty to employ the knowledge gleaned during previous proceedings and make findings based thereon without convening an additional hearing." *United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993).

A collateral challenge is not a substitute for an appeal. *United States v. Frady*, 456 U.S. 152, 165 (1982); *Berthoff v. United States*, 308 F.3d 124, 127 (1st Cir. 2002). "[A] defendant's failure to raise a claim in a timely manner at trial or on appeal constitutes a procedural default that bars collateral review, unless the defendant can demonstrate cause for the failure and prejudice or actual innocence." *Berthoff*, 308 F.3d at 127–28. Procedural default is an affirmative defense. *Sotirion v. United States*, 617 F.3d 27, 32 (1st Cir. 2010). The First Circuit has recognized that "federal courts have the authority to consider procedural default *sua sponte.*" *Rosenthal v. O'Brien,* 713 F.3d 676, 683 (1st Cir. 2013) (citing *Brewer v. Marshall,* 119 F.3d 993, 999 (1st Cir. 1997)); *see also Daniels v. United States*, 532 U.S. 374, 382-83 (2001) (recognizing that "procedural default rules

developed in the habeas corpus context apply in § 2255 cases") (citing *Frady*, 456 U.S. at 167-68).

An allegation of ineffective assistance of counsel can excuse a procedural default if a petitioner demonstrates that counsel's representation "fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). A petitioner must also demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. A district court reviewing a claim of ineffective assistance of counsel need not address both prongs of the *Strickland* test because a failure to meet either prong will undermine the claim. *Id.* at 697. If a petitioner's "claims fail on the merits, his related claims that counsel rendered ineffective assistance in failing to press the claims at trial or on appeal must also fail." *Tse v. United States*, 290 F.3d 462, 465 (1st Cir. 2002) (per curiam).

Under the law of the case doctrine, "issues disposed of in a prior appeal will not be reviewed again by way of a 28 U.S.C. § 2255 motion." *Singleton v. United States*, 26 F.3d 233, 240 (1st Cir. 1994) (internal modifications and quotation marks omitted); *see also Elwell v. United States*, 95 F.3d 1146, 1996 WL 516138 at *5 (1st Cir. 1996) (holding that a petitioner "is not entitled on collateral review to relitigate issues raised on direct appeal, absent an intervening change in the law"); *White v. United States*, 371 F.3d 900, 902 (7th Cir. 2004) (collecting cases and explaining limited exceptions).

"Evidentiary hearings on § 2255 petitions are the exception, not the norm, and there is a heavy burden on the petitioner to demonstrate that an evidentiary hearing is warranted. An evidentiary hearing 'is not necessary when a [§] 2255 petition (1) is inadequate on its face, or (2) although facially adequate, is conclusively refuted as to the alleged facts by the files and records of the case.'" *Moreno-Morales v. United States*, 334 F.3d 140, 145 (1st Cir. 2003) (citation omitted) (quoting *DiCarlo*, 575 F.2d at 954 (quotation marks omitted)).

Summary dismissal of a motion is permitted when the allegations are "'vague, conclusory, or palpably incredible,'" even "'if the record does not conclusively and expressly belie [the] claim.'" *David*, 134 F.3d at 478 (quoting *Machibroda v. United States*, 368 U.S. 487, 495 (1962)).  A court can reasonably require a petitioner to supply the court with salient details of the claim prior to permitting discovery or a hearing. *Id.* (holding that "the district court did not abuse its discretion in refusing to license a fishing expedition").

**B.     Failure to Investigate**

Petitioner argues he received ineffective assistance of counsel because his attorney failed to investigate thoroughly and prepare a defense, including by interviewing witnesses, discovering a way to impeach witnesses' testimony, developing a theory of the case, securing defense witnesses, and introducing exculpatory emails. (Motion at 4, Supplemental Memorandum at 6–7; Reply at 4–5, ECF No. 330.)  Petitioner has failed to identify any evidence that would support a finding that his counsel failed to investigate the case or prepare for trial.  First, Petitioner does not explain how witness interviews would have revealed favorable information for Petitioner.  In addition, Petitioner's suggestion that

his counsel lacked a theory of or strategy for the case is without merit. A review of the trial transcript, including closing arguments, reveals a coherent and reasonable defense strategy to cast doubt on whether Petitioner provided the cyanide that was used and to focus the jury on the issues of causation, mens rea, and the meaning of words like "kill" in the context of a suicide. (*Id.* at 863:3–885:15.)

The record also lacks evidence to support Petitioner's contention that counsel's decision not to call a chemist to testify constitutes substandard practice. Given the circumstantial evidence that Petitioner supplied the cyanide, one can reasonably infer that a chemist would be unlikely to offer any exculpatory evidence. Petitioner's allegations that counsel did not appropriately challenge the testimony of the UPS witness as perjured testimony because he did not know the case well or that counsel failed to present evidence that would undermine the evidence that Petitioner received the potassium cyanide at the UPS store and subsequently sent the poison to Mr. Denton are also unsupported by any reliable record evidence.

Even if Petitioner could demonstrate that counsel's performance was in any way substandard, given that the evidence of guilt on the fraud counts was "overwhelming," and the evidence of guilt was "plentiful" and "very strong" on the charge of mailing injurious articles resulting in death, *Kilmartin*, 944 F.3d at 339, Petitioner cannot establish that he suffered any prejudice as the result of counsel's performance.

### C. Constructive Amendment

Petitioner claims his attorney's failure to object to a constructive amendment of the superseding indictment constitutes ineffective assistance of counsel. According to

7

Petitioner, the amendment he resulted in a more substantial sentence for a misdemeanor offense and allowed the government to offer evidence concerning whether Petitioner intended to kill or injure Mr. Denton, (Motion at 5; Memorandum at 7–8; Reply at 6–8.) Petitioner's contention is apparently based on a misunderstanding of the 18 U.S.C. § 1716(j)(3) offense of conviction.

Section 1716(j)(1) criminalizes the mailing of prohibited items and is punishable by less than a year in prison (a misdemeanor), whereas § 1716(j)(2) criminalizes the mailing of prohibited items with the intent to kill or injure another and is punishable by more than one year (a felony); the maximum sentence is twenty-five years. If the constructive amendment was to substitute a standalone (j)(2) charge for a standalone (j)(1) charge, Petitioner's argument might have some merit. Petitioner, however, was charged in both the original and superseding indictments with violating § 1716(j)(3), which is a felony punishable by death or life in prison and criminalizes committing any of the other § 1716 crimes—including (j)(1) or (j)(2)—if that other predicate offense resulted in death. Petitioner was therefore charged with a capital felony in the original indictment, the text of the superseding indictment, and in the constructively amended superseding indictment.

In the original indictment, a (j)(2) charge served as both an independent count and the predicate for the (j)(3) count. In the text of the superseding indictment, there was a (j)(3) count without another independent count. Some ambiguity existed, therefore, because the (j)(3) count did not explicitly cite the predicate offense it incorporated. The description of the conduct in the superseding indictment more closely resembled the elements of a (j)(1) predicate offense rather than a (j)(2) predicate offense because the text

8

mentioned the mailing of a prohibited item resulting in death but did not reference an intent to kill or injure. The parties and the Court, however, proceeded with the understanding that the predicate offense was still intended to be a (j)(2) violation, which required the Government to prove not only that Petitioner mailed a prohibited article which resulted in death, but also that Petitioner intended to kill or injure another when he mailed the prohibited article.

The First Circuit observed that while the inclusion of the intent element represented a constructive amendment of the superseding indictment, Petitioner was not prejudiced because the only effect was to add an additional element the Government needed to prove to establish Petitioner's guilt on the (j)(3) count. *Kilmartin*, 944 F.3d at 325–26. Contrary to Petitioner's contention, Count One did not allege a misdemeanor. As the First Circuit explained, the indictment alleged a (j)(1) misdemeanor "together with an enhancement for 'death resulting.'" *Id.* at 325. That combination was a capital felony, not a misdemeanor.[2] Regardless, the substantive (j)(3) offense was a capital felony carrying the same penalty; the only difference was the predicate offense. The constructive amendment, therefore, did not change the offense of conviction from a misdemeanor to a felony and did not increase the penalty for Count One of the superseding indictment.

Petitioner nevertheless attempts to establish prejudice from the constructive amendment by arguing that the amendment allowed the Government to spend considerable

---

[2] Petitioner cited the First Circuit's observation that "count 1 [of the superseding indictment] charged the defendant with a misdemeanor . . ." *Id.* at 325 without acknowledging the First Circuit's reference to the enhancement of (j)(3).

time at trial presenting evidence of and arguing about Petitioner's intent, which evidence and argument would otherwise have been irrelevant and not permitted. Petitioner, however, cites no evidence that would have been excluded. Petitioner's intent was plainly relevant to and admissible on other counts (e.g., Count Fifteen - witness retaliation in violation of 18 U.S.C. §§ 1513(a)(1)(B), (a)(2)(A), and 1111 for allegedly killing Mr. Denton with the intent to retaliate against him for providing information to law enforcement about the fraud). Furthermore, arguments and evidence of Petitioner's intent, while not necessary to establish Petitioner's guilt on Count One in the absence of the constructive amendment, would likely have been admitted even if counsel had successfully objected to the constructive amendment. S*ee Old Chief v. United States*, 519 U.S. 172, 183–88 (1997) (recognizing, within limits, the "need for evidentiary richness and narrative integrity" in order for the jury to draw necessary inferences, to "convince the jurors that a guilty verdict would be morally reasonable," and to "satisfy the jurors' expectations about what proper proof should be").

Because the only effect of the constructive amendment was to increase the Government's burden of proof on Count One, and because the amendment did not alter the applicable penalty, Petitioner cannot establish prejudice even if Petitioner could establish that counsel should have objected to the constructive amendment.

### D.     Causation, Definition of Kill, and Mens Rea

Petitioner asserts his counsel provided ineffective assistance when he failed to object to the Court's but-for causation jury instruction and failed to request a proximate cause jury instruction. (Motion at 7; Memorandum at 9–10; Reply at 8–10). Relatedly,

10

Petitioner also faults his attorney for not adequately arguing that Petitioner did not "kill" Mr. Denton or intend to "kill" or "injure" Mr. Denton because Mr. Denton caused the harm to himself. (Motion at 9; Memorandum at 10–11; Reply at 8–10.)

The record reveals that Petitioner's counsel made causation and related arguments to the Court and the jury. Counsel filed a motion to dismiss the indictment on similar grounds before trial. (ECF No. 36). Counsel repeatedly asserted before the jury that Mr. Denton was responsible for his own death. (*See e.g.*, Trial Transcript at 869:22–24 ("don't forget this is a suicide . . . Mr. Denton killed himself"); 881:19–21 ("absent the intentional intervening acts by Mr. Denton, nothing Mr. Kilmartin . . . did could have caused his death"). Counsel included the arguments in his motion for an acquittal and a new trial. (ECF No. 162.) Appellate counsel raised similar issues on direct appeal. *Kilmartin*, 944 F.3d at 328–33. The fact that the arguments were ultimately unsuccessful does not mean that counsel performed deficiently.

Even if the Petitioner could demonstrate that counsel was deficient by failing to raise the issues at other stages of the proceedings, including when the Court addressed jury instructions,[3] the record lacks evidence of prejudice to establish an ineffective assistance claim. The First Circuit, after considering the proximate cause and definitional arguments on direct appeal regarding Count Fourteen (witness tampering in violation of 18 U.S.C. § 1512(a)(1)(A) and (C), alleging that Petitioner killed Mr. Denton knowingly and with the

---

[3] Petitioner infers ineffectiveness from the First Circuit's conclusion that some of the arguments were waived or forfeited as to certain counts. The conclusions do not imply ineffective assistance, however, especially given that the First Circuit considered and rejected the substance of very similar arguments. *See infra*.

11

intent to prevent Mr. Denton's testimony and communication to law enforcement regarding Petitioner's fraud scheme) and assuming, arguendo, that the arguments had merit, concluded that "the evidence in this case is insufficient to sustain the conviction." *Id.* at 330. The First Circuit reasoned that the evidence showed that "the second time around, [Petitioner] sent real cyanide to Denton, knowing that the cyanide was lethal and that Denton intended to ingest it; that Denton received the cyanide; that Denton swallowed it; and that he died as a result." *Id.* at 330–31. For the same reason, the Court can reasonably conclude that even if counsel had successfully argued for different jury instructions, the result of the proceeding would have been the same because the death was foreseeable and "intervening causes normally do not break the causal chain when they are foreseeable." *See id.*

In sum, Petitioner's ineffective assistance claim regarding the causation, mens rea, and definitional arguments do not entitle him to postconviction relief.

E.   **Non-Denton Victims Evidence**

Petitioner contends counsel provided ineffective assistance by failing to object to the testimony and exhibits concerning the victims of the scheme other than Mr. Denton. (Motion at 9; Memorandum at 12–14; Reply at 10–11.) As the First Circuit noted on direct appeal, however, counsel did object to the evidence before and at several points during trial. *Kilmartin*, 944 F.3d at 333–34. To avoid repetitive objections, the Court "treated [Petitioner's] Rule 403 objection to the anecdotal background evidence as subject to a continuing objection (which [courts] sometimes call a 'blanket objection')." *Id.* The First Circuit acknowledged the objections were preserved for appeal. Counsel, therefore, did

12

not act unreasonably, and Petitioner cannot establish prejudice from counsel's decisions. Petitioner also cannot establish prejudice because the First Circuit already determined that given the strength of the other evidence, the admission of the background evidence was harmless as to all the remaining counts of conviction. *Id.* at 338.

Because Petitioner cannot show deficient performance or prejudice, his ineffective assistance claim fails.[4]

## CONCLUSION

Based on the foregoing analysis, an evidentiary hearing is not warranted under Rule 8 of the Rules Governing Section 2255 Cases. In addition, I recommend that the Court deny Petitioner's motion for habeas relief under 28 U.S.C. § 2255 and dismiss Petitioner's motion. I further recommend that the Court deny a certificate of appealability pursuant to Rule 11 of the Rules Governing Section 2255 Cases because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

## **NOTICE**

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen

---

[4] To the extent Petitioner intended or attempted to raise additional grounds for relief, the arguments were not developed and lack merit. For example, I did not discuss Petitioner's Ground Five (related to plea negotiations) because Petitioner knowingly and voluntarily withdrew that claim. (Motion at 9; Memorandum at 11–12; Reply at 2–3.) Petitioner also claimed cumulative error, (Reply at 12–13), and even assuming the Court were willing to permit him to raise a new argument in a reply, the argument would fail as well because Petitioner has not established any error.

13

(14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

  Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

              /s/ John C. Nivison
              U.S. Magistrate Judge

Dated this 3rd day of January, 2022.