UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 1:14-cr-00129-JAW |
| | ) | |
| SIDNEY P. KILMARTIN | ) | |

**ORDER DISMISSING MOTION FOR COMPASSIONATE RELEASE**

An inmate serving a twenty-five-year sentence for mail and wire fraud, mailing injurious articles resulting in death, and witness tampering moves for compassionate release, seeking a reduction of sentence under 18 U.S.C. § 3582(c)(1)(A). The Court concludes the motion is unripe and dismisses the motion without prejudice.

**I.   FACTUAL AND PROCEDURAL BACKGROUND**

On December 9, 2015, a federal grand jury issued a fifteen-count superseding indictment charging Sidney Kilmartin with two counts of wire fraud and one count each of mail fraud, mailing injurious articles resulting in death, witness tampering, and witness retaliation for his alleged conduct with respect to Andrew Denton of Hull, England, who committed suicide by taking potassium cyanide Mr. Kilmartin mailed him. *Superseding Indictment* (ECF No. 85). The remaining nine charges alleged that Mr. Kilmartin perpetrated mail and wire fraud against four other depressed individuals, who ordered and paid for cyanide from Mr. Kilmartin but instead received Epsom salts. *Id.*

Just before trial, Mr. Kilmartin pleaded guilty to the nine counts of mail and wire fraud against the four other individuals named in the superseding indictment.

*Min. Entry* (ECF No. 142). After a six-day trial on the charges involving Mr. Denton, on October 11, 2016, a jury convicted Mr. Kilmartin of two counts of wire fraud and one count each of mail fraud, mailing injurious articles resulting in death, and witness tampering; it acquitted him of Count 15, witness retaliation. *Jury Verdict Form* at 1–2 (ECF No. 153) (*Verdict Form*).

On October 25, 2016, Mr. Kilmartin moved for judgment of acquittal and for a new trial. *Def.'s Mot. for J. of Acquittal and New Trial* (ECF No. 162). On August 24, 2017, the Court denied Mr. Kilmartin's motion. *Order Denying Mot. for Acquittal* (ECF No. 215). On May 22, 2018, the Court imposed a sentence of 300 months of imprisonment on Count 1, mailing injurious articles resulting in death and on Count 14, witness tampering, and 240 months of imprisonment to be served concurrently on Counts 2-13, wire and mail fraud; 5 years of supervised release on Count 1, and 3 years to be served concurrently on Counts 2 through 13; no fine; and $1,041.55 in restitution. *J.* (ECF No. 263). On December 6, 2019, the Court of Appeals for the First Circuit affirmed the sentences imposed on Counts 1 through 13 but vacated and remanded Count 14. *United States v. Kilmartin*, 944 F.3d 315, 343 (1st Cir. 2019). Upon remand, after the Government dismissed Count 14, on September 1, 2020, the Court issued an amended judgment and imposed the same sentence on Counts One through Thirteen. *Am. J.* (ECF No. 307); *Am. Statement of Reasons* (ECF No. 308).

On April 8, 2021, Mr. Kilmartin filed a motion to vacate, set aside, or correct his sentence. *Mot. to Vacate, Set Aside, or Correct Sentence* (ECF No. 309). Following the recommendation of the Magistrate Judge, the Court denied Mr. Kilmartin's

motion on March 15, 2022. *Report and Recommended Decision* (ECF No. 331); *Order Aff. Recommended Decision of the Magistrate Judge* (ECF No. 332).

On September 11, 2023, Mr. Kilmartin filed a motion for compassionate release. *Mot. for Compassionate Release* (ECF No. 335) (*Def.'s Mot.*). A week later, on September 18, 2023, Mr. Kilmartin submitted a letter in support of his motion. *Letter* (ECF No. 336). On November 7, 2023, the Government opposed Mr. Kilmartin's motion. *Resp. in Opp'n* (ECF No. 341) (*Gov't's Opp'n*). Mr. Kilmartin replied on December 13, 2023. *Def.'s Reply Br.* (ECF No. 344) (*Def.'s Reply*). Mr. Kilmartin supplemented the record on January 8, 2024. *Mot. to Suppl. R.* (ECF No. 345); *Order* (ECF No. 348) (granting *Mot. to Suppl. R.*).

## II. THE PARTIES' POSITIONS

### A. Sidney Kilmartin's Motion for Compassionate Release

Mr. Kilmartin moves for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) and expressly asks "for a reduction in sentence of sixty (60) months, or five years." *Def.'s Mot.* at 3-4. Mr. Kilmartin explains that this "would result in a final sentence of 20 years for his offenses." *Id.* at 4. Mr. Kilmartin makes this motion for several reasons. *See Mot.* at 1-15.

First, Mr. Kilmartin says that his "mother needs assistance in her daily living." *Id.* at 4. Currently a family friend is assisting with her care, but Mr. Kilmartin says the family friend "may do so only for a limited number of years." *Id.* Mr. Kilmartin says that "should this Court grant Kilmartin a five-year reduction off his sentence,

3

Kilmartin should be exiting prison about 6 months before the new caregiver must relocate outside of Maine." *Id.*

Second, Mr. Kilmartin argues that "the primary statute of conviction is a rarely used criminal statute and for the most part deals with those who send explosive devices through the mails. This statute was used to basically convict Kilmartin of 'killing' a British subject." *Id.* at 5. Mr. Kilmartin says the Government invoked § 1716 "in order to stretch the facts to imply that the victim was killed by (directly) Kilmartin's hand and not his own." *Id.*

Third, Mr. Kilmartin points to his rehabilitative efforts, saying "[h]e has undertaken many steps to better himself in order to once again be a productive member of society." *Id.* at 6. These include: 1) no discipline issues in the past six-month period, 2) him taking treatment for his mental health issues, 3) about 30 individual classes and programs, 4) regular psychiatric counseling sessions, 5) prayer, 6) mindfulness exercises, 7) physical exercise, 8) leading a weekend Younity Unit self-help group with peers involving AA and NA counseling. *See id.* at 6-7. Mr. Kilmartin concedes that "rehabilitation alone cannot serve as the basis for a reduction in sentence (or compassionate release)" but maintains "it can surely be considered by this Court." *Id.* at 7.

Fourth, Mr. Kilmartin avers he has saved a life after a "fellow inmate had a medical emergency . . . which turned out to be a massive heart attack." *Id.* He attests he "began CPR and kept the inmate—[]—alive until the staff arrived." *Id.* Mr.

4

Kilmartin acknowledges the inmate "eventually died but by all accounts, Kilmartin's efforts kept [him] alive for a while." *Id.*

Fifth, Mr. Kilmartin states that "[i]t is without question that Kilmartin has mental health issues and that this Court is aware." *Id.* He adds that "with this in mind, it is Kilmartin's humble opinion that all he has done, in a positive light, with regard to his own programming, his assistance to other programming inmates, his assistance to Ballard are examples of extraordinary and compelling reasons to examine whether a slight reduction in his sentence should be considered." *Id.* at 7-8. Mr. Kilmartin indicates that he "has also served essentially as a gardener for his unit, over the spring, summer and fall months, for the past 5 years," adding that "[h]e has been repeatedly commended for his efforts. (To the point where his neighboring unit –[]—has asked for him to cover over and look at its grounds.)" *Id.* at 8.

Mr. Kilmartin includes a list of his physical maladies, *id.* at 8-9, a list of factors he believes weigh in favor of the Court granting his request for a sentence reduction, *id.* at 9, and argument as to how the 18 U.S.C. § 3553(a) factors weigh in his favor. *Id.* at 9-14. He concludes by reiterating his requested relief: "a sentence reduction of five (5) years off of his remaining sentence." *Id.* at 14.

    **B.**    **The Government's Opposition**

The Government first argues that Mr. Kilmartin's "request for a five-year sentence reduction enabling his release some time in 2030—roughly six-and-a-half years from now—should be denied without prejudice for lack of ripeness." *Gov't's Opp'n* at 1. The Government contends that the motion "fails to meet the dual ripeness

5

requirements of fitness and hardship," making dismissal without prejudice appropriate. *Id.* at 9 (citing *McInnis-Misenor v. Me. Med. Ctr.*, 319 F.3d 63, 70 (1st Cir. 2003)) ("The critical question concerning fitness for review is whether the claim involves uncertain and contingent events that may occur as anticipated or may not occur at all"). The Government maintains that Mr. Kilmartin's "request for a premature adjudication on his Motion on facts inevitably subject to change between now and 2030 is too abstract. Nor does the Motion raise any 'direct and immediate' dilemma.'" *Id.* at 10 (quoting *United States v. Seger*, 849 F.Supp.2d 76, 82 (D. Me. 2011)).

Next, the Government argues that Mr. Kilmartin "has failed to demonstrate how a reduction in his sentence would be supported by 'extraordinary and compelling reasons.'" *Id.* It is the Government's position that "Defendant's health and other reasons are insufficient" to warrant compassionate release. *Id.* at 11. To support this position, the Government contends:

> [R]egarding his asthma, the medical records do not suggest that the condition is "moderate or severe," and instead indicate consistent prescription management with an inhaler. Defendant's mood disorders are also addressed through treatment at FMC Lexington. His stroke and substance use disorder are both remote, rather than persistent or acute. The strokes appear to trace back to 2018, while his substance use disorder predated his sentence. All other physical issues cited by Defendants are being addressed through referrals, with surgeries looking likely for his knee and polyps.

*Id.*

The Government says Mr. Kilmartin's "other cited bases also miss the extraordinary and compelling mark." *Id.* at 12. As far as his mother is concerned,

6

the Government argues this Court has noted the importance of caring for an ailing parent when there is no other potential caregiver and adds that "is not the situation presented by Defendant, though, where a family friend is available to provide care for a 'number of years.'" *Id.* (quoting *Def.'s Mot.* at 4).

As far as Mr. Kilmartin's "avowed disagreement with the Government's decision to charge him . . . under § 1716," the Government argues it "should not be grounds for a compassionate reduction of sentence [because d]espite his best efforts to minimize his offenses, Defendant's mailing of cyanide did indeed proximately cause Mr. Denton's death." *Id.* at 13 (citing *Kilmartin*, 944 F.3d at 331) ("Denton's death was entirely foreseeable . . . his avowed purpose in sending Denton genuine cyanide the second time around was to facilitate Denton's demise").

Finally, the Government argues that Mr. Kilmartin "remains a danger to the public and the sentencing factors set forth in 18 U.S.C. § 3553(a) weigh against his requested reduction." *Id.* at 1. The Government insists that the "absence of any extraordinary and compelling reasons is dispositive and should end the inquiry," but argue that "[t]o the extent further analysis is required, a sentence reduction should still be denied," because he "has failed to demonstrate that he is not a danger to the safety of the community" and he "has also failed to show that the factors applicable pursuant to § 3553(a) favor a sentence reduction." *Id.* at 14.

C.  **Sidney Kilmartin's Reply**

Mr. Kilmartin first takes issue with some of the points made by the Government. *See Def.'s Reply* at 2-6. Mr. Kilmartin "maintains that a 25-year

7

sentence for a 'hands-off killing' (as the DOJ asserts he committed) wherein the death certificate of Mr. Denton cites 'Death by Suicide' is indeed extraordinary and compelling. Especially in light where, as stated before, Kilmartin's conduct is not illegal in a great many jurisdictions." *Id.* at 3. He reiterates that he "only asks for a few years off his sentence in order to ensure that the care of his mother is uninterrupted." *Id.* As far as his mother's caretaker, Mr. Kilmartin says that "[c]ircumstances change and a mother's care should not overly rely on the availability of a third party alone, especially when it is acknowledged that the third party will indeed be moving on in the future." *Id.* a 4. He adds that "[r]ecidivism rates for persons in this age bracket (over 50) are in the single-digit percentile." *Id.* (parenthetical in original). Mr. Kilmartin contends that the Government "did not address the new cases of Covid that now exist in the dozens" at his facility. *Id.* at 5. He also adds that he has undergone a colorectoral removal and reattachment and that "the extent of the harm to Kilmartin is still not totally known at this point." *Id.* at 6. Finally, he avers that his "asthma is not under control or getting better" and he has had to switch from his Albuterol inhaler to a Corticosteroidal inhalant powder. *Id.*

Mr. Kilmartin turns to the Government's three legal arguments. *See id.* at 7-11.

As far as the ripeness of his claim, Mr. Kilmartin argues that the "issues present will not be going away and there is no reference to evidence or refutation of Kilmartin's evidence that any will do so." *Id.* at 7. He adds that the "direct or

8

immediate dilemma cited by the U.S. exists by way of the ever-present Covid virus, the current, existent and real issue of care for Ms. Kilmartin and the planning, if not the actual arrangement, of care for her and of the real and present health issues of Kilmartin himself." *Id.* at 8. Mr. Kilmartin insists '[t]he issues are ripe at this time. There is no need to wait for these matters to get worse, as they are surely apt to do." *Id.*

Next, Mr. Kilmartin says the Government is "also incorrect" that no extraordinary and compelling reasons exist. *Id.* He cites caselaw from the District of Maine for the proposition that caring for a parent may justify compassionate release. *Id.* at 9-10. Mr. Kilmartin also avers "there is no dispute that health issues and Covid presence have been deemed to satisfy the extraordinary and compelling criteria time and time again. Kilmartin has met this requirement as well." *Id.* at 10.

Mr. Kilmartin writes that the Government is making "blanket and purely conclusory statements that [he] does not meet the requirements of 3553(a)." *Id.* In conclusion, Mr. Kilmartin says: "[s]imply put, none of the three reasons given by the U.S. hold water and no specifics are given to substantiate the U.S.'s concerns. Therefore, Kilmartin's motion should be granted." *Id.* at 11.

### III.   DISCUSSION

Article III of the United States Constitution limits the jurisdiction of federal courts to "actual, ongoing cases or controversies." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990). To ensure that any matter meets that requirement, the Court considers the doctrines of standing, ripeness, and mootness. *See Poe v. Ullman,* 367

U.S. 497, 502-505 (1961); *see also United States v. Univ. of Mass., Worcester*, 812 F.3d 35, 44 (1st Cir. 2016) ("Federal courts are courts of limited jurisdiction.  They cannot act in the absence of subject matter jurisdiction, and they have a sua sponte duty to confirm the existence of jurisdiction in the face of apparent jurisdictional defects").

The ripeness doctrine is "drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Nat'l Park Hosp. Ass'n v. Dep't of the Interior*, 538 U.S. 803, 808 (2003) (quoting *Reno v. Cath. Soc. Servs., Inc.*, 509 U.S. 43, 57 n.18 (1993)).  It "is to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements" when those disagreements are premised on "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580-81 (1985) (citations omitted).

Here, the Government alleges that the matter is not ripe.  It is to be presumed that a cause lies outside of the Court's limited jurisdiction, "and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  As the party asserting ripeness, Mr. Kilmartin bears the burden of demonstrating that the case is ripe, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992), and he must do so "not dependent on 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Trump v. New York*, 141 S. Ct. 530, 534 (2020) (per curiam) (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)).

10

Ripeness has two core elements: fitness and hardship. *Ernst & Young v. Depositors Econ. Prot. Corp.*, 45 F.3d 530, 535 (1st Cir. 1995). Fitness requires that judicial review not rest "upon contingent events that may not occur as anticipated, or indeed may not occur at all." *Labor Rels. Div. of Constr. Indus. of Mass. v. Healey*, 844 F.3d 318, 326 (1st Cir. 2016) (quoting *City of Fall River v. FERC*, 507 F.3d 1, 6 (1st Cir. 2007)). "Federal courts cannot—and should not—spend their scarce resources in what amounts to shadow boxing. Thus, if a plaintiff's claim, though predominantly legal in character, depends upon future events that may never come to pass, or that may not occur in the form forecasted, then the claim is unripe." *Ernst & Young*, 45 F.3d at 537. Under the hardship prong, the Court considers whether "the challenged action creates a direct and immediate dilemma for the parties." *Id.* at 535.

Mr. Kilmartin's request for a future reduction of sentence does not meet either ripeness prong. First, Mr. Kilmartin has not established fitness. The relief Mr. Kilmartin requests is a five-year sentence reduction on a sentence that has approximately ten years left. To support his request, Mr. Kilmartin cites his mother's and his own health as extraordinary and compelling reasons. However, health outcomes "depend[] upon future events that may never come to pass, or that may not occur in the form forecasted." *Id.* at 537. Here, the Court is not able to make medical prognostications about Mr. Kilmartin's mother's health in five years, what services and support she may need in five years, and whether her current caretaker may stay or another one other than Mr. Kilmartin may become available.

11

The same principle extends to Mr. Kilmartin himself.  The Court is impressed with Mr. Kilmartin's dedication to his physical and mental health, but there are no health guarantees for anyone in life, and no one can predict his own health years from now.  As such, the claim is not fit, militating toward it being unripe.  *See id.*

Even if Mr. Kilmartin's requested relief met the first prong, fitness, it would run aground on the second prong: hardship.  Before a court may find a case is ripe, the First Circuit requires "a direct and *immediate* dilemma," *Ernst & Young*, 45 F.3d at 537 (emphasis supplied), and by its terms, a reduction of sentence that would not commence for five years cannot meet this standard.

As this motion is not fit for resolution and there is no immediate hardship as that term is used in this context, to reach the merits would be a "premature adjudication" because it is "contingent future events that may not occur as anticipated, or indeed may not occur at all."  *Thomas*, 473 U.S. at 580-81 (citations omitted).  As such, Mr. Kilmartin has not established that the Court has the requisite jurisdiction to decide the matter, and the Court dismisses without prejudice his motion as unripe.

Finally, the Court is impressed with Mr. Kilmartin's stated progress during his term of incarceration.  In his motion, Mr. Kilmartin discusses the numerous classes and programs he has undertaken, including regular psychiatric counseling sessions, prayer, mindfulness exercises, physical exercise, leadership in a self-help group, and gardening.  Mr. Kilmartin's attempt to save the life of a fellow inmate is also impressive.  The Court encourages Mr. Kilmartin to persevere and continue to

make progress during his incarceration so that he may emerge a mentally and physically healthy, constructive, and law-abiding citizen when released.

**IV.   CONCLUSION**

The Court DISMISSES without prejudice Sidney Kilmartin's Motion for Compassionate Release (ECF No. 335).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 13th day of May, 2024.