UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 1:14-cr-00129-JAW |
| | ) | |
| SIDNEY P. KILMARTIN | ) | |

**ORDER DISMISSING MOTION FOR COMPASSIONATE RELEASE**

An inmate serving a twenty-five-year sentence for mail and wire fraud, mailing injurious articles resulting in death, and witness tampering moves for compassionate release, seeking a reduction of sentence under 18 U.S.C. § 3582(c)(1)(A). The Court concludes the motion is unripe and dismisses the motion without prejudice.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On December 9, 2015, a federal grand jury issued a fifteen-count superseding indictment charging Sidney Kilmartin with two counts of wire fraud and one count each of mail fraud, mailing injurious articles resulting in death, witness tampering, and witness retaliation for his alleged conduct with respect to Andrew Denton of Hull, England, who committed suicide by taking potassium cyanide Mr. Kilmartin mailed him. *Superseding Indictment* (ECF No. 85). The remaining nine charges alleged that Mr. Kilmartin perpetrated mail and wire fraud against four other depressed individuals, who ordered and paid for cyanide from Mr. Kilmartin but instead received Epsom salts. *Id.*

Just before trial, Mr. Kilmartin pleaded guilty to the nine counts of mail and wire fraud against the four other individuals named in the superseding indictment.

*Min. Entry* (ECF No. 142). After a six-day trial on the charges involving Mr. Denton, on October 11, 2016, a jury convicted Mr. Kilmartin of two counts of wire fraud and one count each of mail fraud, mailing injurious articles resulting in death, and witness tampering; it acquitted him of Count 15, witness retaliation. *Jury Verdict Form* at 1–2 (ECF No. 153) (*Verdict Form*).

On October 25, 2016, Mr. Kilmartin moved for judgment of acquittal and for a new trial. *Def.'s Mot. for J. of Acquittal and New Trial* (ECF No. 162). On August 24, 2017, the Court denied Mr. Kilmartin's motion. *Order Denying Mot. for Acquittal* (ECF No. 215). On May 22, 2018, the Court imposed a sentence of 300 months of imprisonment on Count 1, mailing injurious articles resulting in death and on Count 14, witness tampering, and 240 months of imprisonment to be served concurrently on Counts 2-13, wire and mail fraud; 5 years of supervised release on Count 1, and 3 years to be served concurrently on Counts 2 through 13; no fine; and $1,041.55 in restitution. *J.* (ECF No. 263). On December 6, 2019, the Court of Appeals for the First Circuit affirmed the sentences imposed on Counts 1 through 13 but vacated and remanded Count 14. *United States v. Kilmartin*, 944 F.3d 315, 343 (1st Cir. 2019). Upon remand, after the Government dismissed Count 14, on September 1, 2020, the Court issued an amended judgment and imposed the same sentence on Counts 1 through 13. *Am. J.* (ECF No. 307); *Am. Statement of Reasons* (ECF No. 308).

On April 8, 2021, Mr. Kilmartin filed a motion to vacate, set aside, or correct his sentence. *Mot. to Vacate, Set Aside, or Correct Sentence* (ECF No. 309). Following the recommendation of the Magistrate Judge, the Court denied Mr. Kilmartin's

motion on March 15, 2022. *Report and Recommended Decision* (ECF No. 331); *Order Aff. Recommended Decision of the Magistrate Judge* (ECF No. 332).

On September 11, 2023, Mr. Kilmartin filed a motion for compassionate release. *Mot. for Compassionate Release* (ECF No. 335). Mr. Kilmartin asked for a "reduction in sentence of sixty (60) months, or five years," as his mother "needs assistance in her daily living". *Id.* at 3-4. On May 13, 2024, The Court denied Mr. Kilmartin's motion because it depended "upon future events that may never come to pass, or that may not occur in the form forecasted," *Ernst & Young v. Depositors Econ. Prot. Corp.*, 45 F.3d 530, 537 (1st Cir. 1995), and thus was not ripe for adjudication. *Order Dismissing Mot. for Compassionate Release* (ECF No. 350) (*Order*). Mr. Kilmartin subsequently wrote to the Court on June 3, 2024, thanking the Court for its explanation of its denial of his motion and reiterating his commitment to continuing progress in being "a better and law-abiding citizen for myself, my family, and the community." *Letter* (ECF No. 351).

On May 5, 2026, Mr. Kilmartin filed a second motion for compassionate release. *Mot. for Compassionate Release* (ECF No. 352) (*Def.'s Mot.*). On June 9, 2026, the Government opposed Mr. Kilmartin's motion. *Resp. in Opp'n* (ECF No. 356) (*Gov't's Opp'n*). Mr. Kilmartin replied on July 13, 2026. *Def.'s Reply to U.S.'s Resp. to Def.'s Mot. for Compassionate Release* (ECF No. 359) (*Def.'s Reply*). On August 5, 2026, the Government filed a motion for leave to file additional exhibits, *Mot for Leave to File Add. Exh.* (ECF No. 360), which the Court granted on August 28, 2026. *Order* (ECF No. 361).

## II. THE PARTIES' POSITIONS

### A. Sidney Kilmartin's Motion for Compassionate Release

Mr. Kilmartin moves for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) and asks for a reduction in sentence of eighteen months. *Def.'s Mot* at 3-4. Mr. Kilmartin explains that this "would result in a final sentence of 23 ½ years for his offenses." *Id.* at 4. Mr. Kilmartin offers the following justifications in support of his motion.

First, Mr. Kilmartin states that, as before, his mother "needs assistance with her care." *Id.* He maintains that, as was the case in his prior motion for compassionate release, his mother will have a caregiver up to about eighteen months before the currently scheduled release date. *Id.* Mr. Kilmartin notes that his previous request was for a larger reduction in sentence, but "due to changed circumstances," he now requests a smaller amount in reduction.

Second, Mr. Kilmartin argues, as he did in his prior motion, that "the primary statute of conviction is a rarely used criminal statute and for the most part deals with those who send explosive devices through the mails. This statute was used to basically convict Kilmartin of 'killing' a British subject." *Id.* at 5. Mr. Kilmartin states that the Government invoked § 1716 "in order to stretch the facts to imply that the victim was killed by (directly) Kilmartin's hand and not his own." *Id.*

Third, Mr. Kilmartin again points to his rehabilitative efforts, saying that "[h]e has undertaken many steps to better himself and engage in treatment that would help him overcome some of the mental issues that induced the conduct for which he

was convicted." *Id.* at 6. Mr. Kilmartin submits a report of all the classes and other activities he has engaged in, and notes that his case manager has stated that his was "one of the most accrued First Step Act programming credits" he had ever seen. *Id.* Mr. Kilmartin concedes that "rehabilitation alone cannot serve as the basis for a reduction in sentence (or compassionate release)" but maintains "it can surely be considered by this Court." *Id.* at 7.

Fourth, Mr. Kilmartin avers he has saved a life after a "fellow inmate had a medical emergency . . . which turned out to be a massive heart attack." *Id.* He attests he "began CPR and kept the inmate—[]—alive until the staff arrived." *Id.* Mr. Kilmartin acknowledges the inmate "eventually died but by all accounts, Kilmartin's efforts kept [him] alive for a while." *Id.*

Fifth, Mr. Kilmartin states that "[i]t is without question that Kilmartin has mental health issues and that this Court is aware." *Id.* He adds that "with this in mind, it is Kilmartin's humble opinion that all he has done, in a positive light, with regard to his own programming, his assistance to other programming inmates, his assistance to Ballard are examples of extraordinary and compelling reasons to examine whether a slight reduction in his sentence should be considered." *Id.* at 7-8. Mr. Kilmartin indicates that he "has also served essentially as a gardener for his unit, over the spring, summer and fall months, for the past 8 years," adding that "[h]e has been repeatedly commended for his efforts. (To the point where his neighboring unit –[]—has asked for him to cover over and look at its grounds.)" *Id.* at 8.

Mr. Kilmartin includes a list of his physical maladies, *id.* at 8-9, a list of factors he believes weighs in favor of the Court granting his request for a sentence reduction, *id.* at 9, and argument as to how the 18 U.S.C. § 3553(a) factors weigh in his favor. *Id.* at 9-14. He concludes by reiterating his requested relief: "a small reduction of eighteen months in order to coordinate his end-of-sentence with the need of his mother." *Id.* at 14.

Finally, Mr. Kilmartin notes that the Court in its 2023 ruling dismissing his motion for compassionate release, determined at that time the motion was not ripe for consideration. *Id.* at 14. He states that his issues are "present in the here and now" including the presence of Covid, his ongoing health issues, his mother's health needs, and his tremendous achievements. *Id.*

**B. The Government's Opposition**

The Government first argues that, as a preliminary matter, Mr. Kilmartin's request should be dismissed without prejudice for lack of ripeness. *Gov't's Opp'n.* at 1, 4. They note that the actual details of Mr. Kilmartin's mother's care needs in at some point in the future are "remote to the point of conjecture." *Id.* at 4. The Government maintains that Mr. Kilmartin's "request for a premature adjudication on his Motion on facts inevitably subject to change between now and 2032 is too abstract. Nor does the Motion raise any 'direct and immediate' dilemma.'" *Id.* at 10 (quoting *W.R. Grace & Co. v. EPA*, 959 F.2d 360, 364 (1st Cir.1992)). They also argue that Mr. Kilmartin failed to exhaust his administrative remedies prior to filing the

instant motion, as there the BOP found no record that Mr. Kilmartin sent a request for relief to the Warden. *Id.* at 7-8.

Next, the Government argues that Mr. Kilmartin has "failed to establish that extraordinary and compelling reasons warrant a reduction of his sentence," *Id.* at 8-9., as there is no evidence that Mr. Kilmartin is the only available caregiver as required by U.S.S.G. § 1B1.13(b)(3)(C) to establish grounds for release. *Id.*

The Government also argues that Mr. Kilmartin's disagreement with the statute under which he was charged should not be grounds for a compassionate reduction of his sentence. *Id.* at 9. They further note that Mr. Kilmartin's rehabilitation work is insufficient to warrant a sentence reduction, *id.* at 10, and argue that Mr. Kilmartin's medical issues are "not uncommon for individuals in their sixties" and do not warrant relief. *Id.*

Finally, the Government maintains that Mr. Kilmartin poses a danger to the public under the sentencing factor set forth in 18 U.S.C. § 3553(a). *Id.* at 11-12.

**C. Sidney Kilmartin's Reply**

In his reply, Mr. Kilmartin argues that the motion is ripe, taking issue with the Government's calculation that he is due for release in 2033 or 2034, and arguing instead that his own calculations demonstrate that he "should be released to home confinement sometime in the latter part of 2027 or perhaps a little earlier." *Def.'s Reply* at 2-3. Mr. Kilmartin maintains that his mother's need for care is "powerful and convincing" sufficient to warrant compassionate release. *Id.* at 4-5 (quoting *United States v Canales-Ramos,* 19 F.4th 561, 567 (1st Cir. 2021). Mr. Kilmartin also

reiterates the requirements for exhaustion of administrative remedies, suggesting he has fulfilled these. *Id.* at 5.

Mr. Kilmartin finally argues that the goal of the U.S. criminal justice system is to reform its inmates, and that while his sending poison in the mail was a "horrible act and grave mistake, [it] was also not an act of 'violence.'" *Id.* at 6. Mr. Kilmartin avers that the U.S. has cited no evidence suggesting he is a violent person today and says he has made a "180° turn" and been a model inmate while incarcerated. *Id.*

## III. DISCUSSION

Article III of the United States Constitution limits the jurisdiction of federal courts to "actual, ongoing cases or controversies." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990). To ensure that any matter meets that requirement, the Court considers the doctrines of standing, ripeness, and mootness. *See Poe v. Ullman,* 367 U.S. 497, 502-505 (1961); *see also United States v. Univ. of Mass., Worcester*, 812 F.3d 35, 44 (1st Cir. 2016) ("Federal courts are courts of limited jurisdiction. They cannot act in the absence of subject matter jurisdiction, and they have a sua sponte duty to confirm the existence of jurisdiction in the face of apparent jurisdictional defects").

The ripeness doctrine is "drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Nat'l Park Hosp. Ass'n v. Dep't of the Interior*, 538 U.S. 803, 808 (2003) (quoting *Reno v. Cath. Soc. Servs., Inc.*, 509 U.S. 43, 57 n.18 (1993)). It "is to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements" when those disagreements are premised on "contingent future events that may not

occur as anticipated, or indeed may not occur at all." *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580-81 (1985) (citations omitted).

Here, the Government alleges that the matter is not ripe. Federal courts are courts of limited jurisdiction, and the United States Supreme Court has written that a court must "presumed that a cause lies outside [the Court's] limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Furthermore, the law places "the burden of establishing the contrary. . .upon the party asserting jurisdiction." *Id.* As the party asserting ripeness, Mr. Kilmartin bears the burden of demonstrating that the case is ripe, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992), and he must do so "not dependent on 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Trump v. New York*, 141 S. Ct. 530, 534 (2020) (per curiam) (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)).

Ripeness has two core elements: fitness and hardship. *Ernst & Young v. Depositors Econ. Prot. Corp.*, 45 F.3d 530, 535 (1st Cir. 1995). Fitness requires that judicial review not rest "upon contingent events that may not occur as anticipated, or indeed may not occur at all." *Labor Rels. Div. of Constr. Indus. of Mass. v. Healey*, 844 F.3d 318, 326 (1st Cir. 2016) (quoting *City of Fall River v. FERC*, 507 F.3d 1, 6 (1st Cir. 2007)). "Federal courts cannot—and should not—spend their scarce resources in what amounts to shadow boxing. Thus, if a plaintiff's claim, though predominantly legal in character, depends upon future events that may never come to pass, or that may not occur in the form forecasted, then the claim is unripe." *Ernst*

*& Young*, 45 F.3d at 537. Under the hardship prong, the Court considers whether "the challenged action creates a direct and immediate dilemma for the parties." *Id.* at 535.

Unfortunately for Mr. Kilmartin, as with his last request for compassionate release, his request for a future reduction of sentence does not meet either ripeness prong. First, Mr. Kilmartin has not established fitness. The relief Mr. Kilmartin requests is an eighteen-month sentence reduction on a sentence that has approximately five years left. To support his request, Mr. Kilmartin cites his mother's and his own health as extraordinary and compelling reasons. However, health outcomes "depend[] upon future events that may never come to pass, or that may not occur in the form forecasted." *Id.* at 537. Here, the Court cannot make medical prognostications about Mr. Kilmartin's mother's health in five years, what services and support she may need five years hence, and whether her current caretaker may stay or whether someone other than Mr. Kilmartin may become available.

Moreover, Mr. Kilmartin's arguments in support of deeming the motion ripe themselves demonstrate his request's lack of fitness for judgment at this time. Mr. Kilmartin argues that he needs an eighteen-month reduction in sentence to fill a gap in care for his mother. But Mr. Kilmartin does not allege with any specificity *when* that care gap will arise. It is unclear to the Court whether any gap is anticipated at all if, as Mr. Kilmartin argues, he qualifies for a significant reduction in his sentence under the First Step Act, DD RDAP programming, and Second Chance Act. *Def.'s*

*Reply* at 2-3. This is the exact type of "premature adjudication" resting on "contingent future events that may not occur as anticipated, or indeed may not occur at all," that the ripeness doctrine cautions courts to wade into. *Thomas,* 473 U.S. at 580-81 (citations omitted). In short, the defects with Mr. Kilmartin's request have not changed in the intervening three years. Mr. Kilmartin has not established that the Court has the requisite jurisdiction to decide the matter, and the Court dismisses without prejudice his motion as unripe.

As before, the Court remains impressed by Mr. Kilmartin's dedication to progress and self-improvement during his term of incarceration. The Court encourages Mr. Kilmartin to continue in his work for himself and for others during his incarceration.

## IV. CONCLUSION

The Court DISMISSES without prejudice Sidney Kilmartin's Motion for Compassionate Release (ECF No. 352).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 23rd day of November, 2026.